**In re SCHWARTZ.**

No. 29827.

District Court, E. D. New York.

Nov. 12, 1936.

David Haar, of New York City (Robert H. Epstein, of New York City, of counsel), for Harry N. Schiff, a creditor.

Forrest S. Chilton, of Brooklyn, N. Y., for bankrupt.

BYERS, District Judge.

Motion to confirm report of referee denying discharge.

The specifications as originally filed are four in number; the referee permitted an amendment to the third, by adding the name of a creditor to those said to have been omitted from the schedules; he also permitted a fifth specification to be added by amendment, specifying property alleged to have been knowingly and fraudulently concealed from the trustee with intent to hinder, etc., the items being articles of furniture, etc., covered by a chattel mortgage given to the creditor whose name was so added to the third specification.

The first specification presents an interesting question of law, in that it is based upon a prior voluntary petition filed in this court by the bankrupt, in which the same debts were listed as those from which he now seeks discharge, although he did not obtain a discharge from them in the first proceeding, and the opportunity to apply therefor did not exist when the specifications in this proceeding were filed.

The facts are that, on February 13, 1935, this bankrupt filed his petition in voluntary bankruptcy, was at once adjudicated, and the proceedings in due course were referred to a referee in bankruptcy. Those proceedings were abandoned; that is to say, the bankrupt never paid the indemnity to the referee in accordance with General Order X, as amended in 1933 (11 U.S.C.A. following section 53), and six months after the filing of the petition, namely, during the month of August, 1935, the referee filed a recommendation of dismissal.

The referee here treats the first proceeding as one in which the bankrupt has been denied his discharge, and consequently he holds that no discharge can be had in this proceeding as to the debts that were scheduled in the first. This conclusion is based upon the decision in Freshman v. Atkins, 269 U.S. 121, 46 S.Ct. 41, 70 L. Ed. 193.

That case involved successive bankruptcy proceedings separated by a period of seven years, and there were certain creditors common to both. In the first, an application for discharge had been made, and the referee had filed his report recommending that it be denied, but the report was not confirmed by the court until after the second proceeding had been instituted. The conclusion was announced that the pendency of the first application precluded a consideration of the second, as to the same debts, and many cases in the lower courts were cited to the same effect. The language following may be quoted: "A proceeding in bankruptcy has the characteristics of a suit, and since the denial of a discharge, or failure to apply for it, in a former proceeding is available as a bar, by analogy the pendency of a prior application for discharge is available in abatement as in the nature of a prior suit pending, in accordance with the general rule that the law will not tolerate two suits at the same time for the same cause."

The question for decision here is whether the earlier proceeding initiated by this bankrupt falls within the above rule.

The status of the first proceeding, upon the filing of the referee's recommendation of dismissal, was that the proceeding had terminated. It could have been the subject of an order of dismissal, which the court could have made whether the bankrupt opposed it or not. In re Crisp (D.C.) 239 F. 419.

If the bankrupt had sought to reinstate the proceeding after its termination, he would have failed. Zimmerman v. Eden, 60 App.D.C. 338, 54 F.(2d) 449.

An application for a discharge cannot be maintained separate and apart from a bankruptcy proceeding. It is merely relief which a bankrupt may seek as an incident to turning over his property to a trustee for equal distribution among his creditors.

The court could not have entertained an application for discharge, after the bankruptcy proceeding initiated by the petition and adjudication had terminated, even though the bankrupt was responsible for that result. This must be clear within section 14 of the act, as amended (11 U.S.C.A. § 32), which is in part:

"Any person may, after the expiration of one month and within twelve months, subsequent to being adjudged a' bankrupt, file an application for a discharge in the court of bankruptcy in which the proceedings *are pending* * * *." (Italics added.)

■ There was no proceeding pending after the referee noted the relinquishment. One was pending which was potentially adequate to support later steps, such as the meeting of creditors pursuant to section 55 of the act (11 U.S.C.A. § 91), and the application for discharge pursuant to section 14, and so continued until it became apparent, by the action of the referee, that for all purposes the proceeding had been abandoned and therefore become incapable of supporting either or both of the said subsequent steps.

■ Since the bankrupt could not have sought discharge after there ceased to be a *pending proceeding* and within the time limited by section 14, that is, by February 13, 1936, it is not perceived how he can now be said to have suffered a denial of discharge through "failure to apply for it within the statutory time" within the decision of Freshman v. Atkins, supra.

It is thought that in this respect the present case is essentially different from Pollet v. Cosel (C.C.A.) 179 F. 488, 30 L.R.A.(N.S.) 1164, in which the petition for discharge in the first proceeding had been dismissed for failure to prosecute and appear for examination. And In re Fiegenbaum (C.C.A.) 121 F. 69, in which there had been a denial of discharge on the merits, in the first proceeding; and the like case of In re Kuffler (C.C.A.) 151 F. 12. And also In re Mayer (D.C.) 4 F.Supp. 203, in which it is assumed that no application was made at all for discharge in the first proceeding (the reference in the opinion in the second paragraph of the second column, to the petition filed March 25, 1933, is thought to mean the petition filed March 26, 1932).

In all of these cases the several bankrupts had possessed the legal right in the first proceedings to apply for a discharge, and had either done so unsuccessfully or failed to do it at all. Here the bankrupt was not in a position to seek the relief, and therefore cannot be deemed to have lost or forfeited it.

Any other conclusion, on these facts, would result in depriving the bankrupt of the statutory period of · eleven months within which to seek discharge, for he could not have applied at ·all in the first proceeding once that lost the status of a pending proceeding, and the referee's decision now deprives him of any opportunity to do so in the second. Compare In re Perry (D.C.) 50 F.(2d) 464.

As to the first specification, the report will be overruled.

■ The second specification alleges destruction or concealment of books, etc., including check vouchers, bank book and check book, from which financial condition and business transactions might be ascertained.

The testimony sufficiently indicates that the finding of the referee sustaining this specification is supported by the evidence.

The bankrupt produced neither check book, vouchers, nor a bank book.

He did produce a corporate ledger, of the corporation by which he is employed, and the entries relied upon to establish the reason for his having no bank account and no record whatever of receipts and disbursements, were by no means adequate.

It may be assumed that during recent years his wife's income as a dress designer has been larger than his own as a salesman, but his own income was shown to have been substantial enough to confront him with a task which he has not borne.

Without recounting his various corporate enterprises and his business activities, the testimony justifies the conclusion that his failure to produce books and records cannot be deemed "to have been justified, under all the circumstances of the case," within section 14b of the act, as amended (11 U.S.C.A. § 32 (b).

The decisions cited for the bankrupt involve facts so remote from those appearing in this record, that a discussion of those cases would not be appropriate.

■ The fourth specification relates to the bankrupt's failure to explain satisfactorily his losses of assets, etc.

The reasoning which leads the referee to sustain the second specification also sustains this. The presumption of correctness which attaches to his report has not been impaired by argument, nor does the testimony fail to support his conclusion.

The finding as to this specification is sustained.

The third specification as filed contained the names of creditors as to whom no proof was offered; but, by amendment granted by the referee, another creditor was added, whose name is not in the schedules.

The bankrupt urges that the referee lacked the power to grant the amendment. Such an exercise of power has been approved in-this Circuit in a case in which no new issue was presented, but the one created by the specification was restated in order to conform to the words of the statute. In re Weston (C.C.A.) 206 F. 281.

This amendment perhaps expanded but did not otherwise change the issue originally tendered. In that respect, it differs from In re Hurowitz (D.C.) 14 F.Supp. 71, in the First Circuit. As General Order No. 32 is presently understood, in the light of Lerner v. First Wisconsin Nat. Bank, 294 U. S. 116, 55 S.Ct. 360, 362, 79 L.Ed. 796, the evil sought to be remedied, in the practice governing objections to discharges or compositions, was that of delay and procrastination for unworthy purposes. To correct that, the objectants must plead on a day certain, but that can hardly mean that they may not amend their pleadings if justice so requires, provided no delay is thereby occasioned. None was involved in this amendment, and the evidence shows that there was meritorious reason for granting it.

The fifth specification, also allowed as an amendment by the referee, added a new issue by setting forth concealment of property, from the trustee, namely, chattels which had been secured by chattel mortgage to the creditor whose name had been so added to the third specification.

The bankrupt argues that this amounted to the filing of a specification after the time to do so had expired.

He made no such objection before the referee, and testified concerning these matters, and offered his wife as a witness on the merits.

The Lerner Case, supra, requires obedience to General Order XXXII, as amended (11 U.S.C.A. following section 53), but clearly says that under General Order XXXVII (11 U.S.C.A. following section 53), and permissive provisions of the Bankruptcy Act, "the courts may exercise discretion sufficient for the successful conduct of proceedings in varying circumstances. Thus, while an objecting creditor must file specifications showing the grounds of his opposition on the day when creditors are required to show cause, that day may be fixed or postponed by the court in view of the existing situation."

The issue presented by the fifth specification was but another aspect of the amended third, so far as this creditor was concerned, and that circumstance alone is thought to save it, assuming that the bankrupt has not waived his objection by failing to make it before the referee. An independent issue, new to the specifications, is not here involved in any true sense, and the approval of this report will therefore be of no avail in a case which involves an amendment of that kind.

The finding of the referee is assailed on the merits, and something is required to be said on the subject.

The added creditor, Kirschenbaum, held a chattel mortgage on the items of furniture and household appurtenances in question. Attached to his mortgage given in 1933, is an affidavit signed by the bankrupt and his wife, asserting joint ownership of those properties.

A business card of the bankrupt's present corporate employer (in which his wife apparently is a substantial stockholder) bears a pencil endorsement reading: "Feb. 2, 1935. For one dollar to me I release L. Schwartz from Notes and Mortgage made by him & wife to me. Ben Kirschenbaum."

This was received in evidence. If its authenticity be assumed, its legal effect must be understood in light of what Kirschenbaum said about it in his testimony. He was referring to the eve of the first bankruptcy proceeding, and described the transaction as follows:

"Q. And did you do anything about it at that time? A. Yes, we drew up just a card there, just saying as a matter of record that I would release him of all the obligations to that particular loan."

This testimony was stricken as tending to alter the terms of a written instrument, but the card itself seems not to have been stricken although counsel have discussed the subject as though it were.

The notes secured by the chattel mortgage were made by the bankrupt and endorsed by his wife, and have been paid regularly on their respective dates, down to the present.

The entire situation as revealed in the testimony is unconvincing.

Why it was deemed expedient not to have Kirschenbaum listed as a creditor is not made to appear, unless the loan he is alleged to have made was thought to be a subject about which it would be better for the creditors not to inquire.

It seems not to have been argued, that under that instrument title may have passed to the creditor, and hence, in the technical sense, the bankrupt could not have properly listed the chattels as his own.

Passing that, he would still have the right to redeem by paying the mortgage, and in either of these aspects the bankrupt's interest in the various chattels should have appeared in his schedules.

The referee has concluded that Kirschenbaum was a creditor of the bankrupt, and that finding is not inconsistent with the testimony as a whole, and will not be disturbed.

It follows then that the bankrupt's interest in the chattels, whatever its legal character and dimensions, should have been listed in the schedules, and that his failure in this respect may be deemed to have been deliberate and intentional and therefore to have constituted concealment. The report will be confirmed also as to the third and fifth specifications.

Motion granted as indicated. Settle order.