## SCHOFIELD v. MORIYAMA.

Circuit Court of Appeals, Ninth Circuit.
February 20, 1928.

Rehearing Denied March 26, 1928.

No. 5288.

1. **Bankruptcy ⬤⟿415(2)—Referee, as special master, held to have authority to determine that claim of creditor objecting to discharge was duly filed and allowed, but lost from files.**

While a referee is without authority to adjudicate a claim filed long after expiration of time fixed for filing claims, he has power as special master to whom has been referred bankrupt's petition for discharge and objections filed by a claimed creditor to inquire and determine that the claim of the objector was duly filed and allowed in proper time, but was mislaid or lost by a former referee, and on such finding the creditor has a standing to maintain his objections.

2. **Bankruptcy ⬤⟿372—No formal procedure is prescribed or required for reopening an administration (Bankr. Act [11 USCA]).**

Bankruptcy Act (11 USCA) prescribes no formal procedure for reopening an administration, the important requisite being only that in some competent manner the court be convinced that there are unadministered assets of the estate, and a petition based on the report of a special master is sufficient to authorize such reopening.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California.

In the matter of S. Moriyama, bankrupt. On appeal by James Schofield, trustee, from an order vacating an order of the referee for sale of real estate. Reversed, with directions.

W. I. Wilson, of Brawley, Cal., and Paul W. Sampsell and Frank C. Weller, both of Los Angeles, Cal., for appellant.

Frank Birkhauser, of El Centro, Cal., for appellee.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

DIETRICH, Circuit Judge. The trustee in bankruptcy appeals from an order of the District Court, vacating an order of sale of real property made by the referee upon a re-reference of the estate.

Moriyama was adjudicated a bankrupt on January 19, 1923, with reference in due course. The first meeting of creditors was noticed for February 5, 1923, and continued to June 19, 1923, at which time a trustee was appointed. There was a change in the office of referee, and on January 8, 1924, a formal order was made re-referring the mat-

24 F.(2d)—30½

ter to the new referee, Huber A. Collins. On March 25, 1924, the trustee reported no assets found, and after notice to creditors the referee on May 29, 1924, noted the "case closed and files sent to clerk." In the meantime on November 17, 1923, the bankrupt had filed his petition for a discharge, and notice thereon was ordered. Subsequently, on November 6, 1924, he filed an amended petition, and notice upon it also was ordered. Responding to this amended petition, one James L. Allen, on December 24, 1924, filed a paper designated "Petition * * * for Re-Reference," in which, after alleging that he was a creditor of the estate, he referred to certain real and personal property which he claimed ¡belonged to the estate and had been fraudulently covered by pretended mortgages executed by the bankrupt, and prayed that the estate be re-referred for further administration, and that the application for discharge be denied.

Construing this Allen "Petition" as in effect objections by a creditor to a petition for a discharge, District Judge McCormick on January 26, 1925, referred the amended petition for discharge and "these objections" to Huber A. Collins "as special master, to take testimony, hear evidence, make findings of fact, and draw conclusions of law, and report the same" for further consideration of the court. In pursuance of this order Collins took the testimony, and on June 24, 1925, reported his findings and conclusions. Of these findings, one was to the effect that Allen had filed with the referee to whom the estate had originally been referred "his duly authenticated and proven claim" against the bankrupt, but that, upon taking over the files and records of his predecessor, he (Collins), as referee, had found them in a "chaotic condition," and some of the files, including Allen's claim, he had not discovered, but from the evidence he was satisfied that the claim had been duly filed "within the time allowed by law." His report closed with a recommendation that Allen's claim be allowed against the estate, that the bankrupt's petition for discharge be denied, that the estate be again referred to him as referee, and that "a new trustee be appointed, with power to take possession of and sell the real property listed in the bankrupt's schedule herein," which is the identical property referred to in Allen's "objections" and in the subsequent order of sale now in question.

On the same date that the report was filed, Allen filed a verified petition, called a motion to reopen the estate, in which he rep-

resented that he was a creditor with a claim for $836.06, for which amount he had duly and regularly filed and proved his claim within the time allowed by law, but that said claim had become mislaid or lost, and the new referee could not find it, and that he had on June 9, 1925, filed an "amended claim" for said amount. He further represented that there was certain property, the property referred to in the special master's report, which had not been administered. He therefore prayed that the estate be reopened, that a new trustee be appointed, and that the administration be carried to completion.

In harmony with such representations it appears as a fact that on June 9, 1925, Allen did file with Collins, as referee, what is denominated as his "Amended Claim," which the referee indorsed: "Allowed for $836.06, June 23, 1925. Huber A. Collins, Referee." It is not improbable that this was intended merely as a substitute record for the original lost claim. Certainly for any other purpose the filing and so-called allowance by the referee must be held to be without efficacy, for the reason that the administration had been closed, and also because the time for presenting claims had long since expired.

The bankrupt resisted the recommendations of the special master, both by "exceptions" to the findings and by "petition for review," but upon October 8, 1925, District Judge James, to whom the matter was submitted, entered an order approving and confirming the report and recommendations, and re-referring the estate to Collins, as referee in bankruptcy, "for such further proceedings as may be consistent with this order and with the report" of the special master. In response to a petition for rehearing filed by the bankrupt, praying, among other things, that the record be clarified by final order and judgment, Judge James, on October 30, 1925, entered another order by which, after referring to the order of October 8th, and reciting that "said application for discharge on the part of said bankrupt having, by said order so made, been denied," he directed "that said petition for rehearing be and it is hereby denied; an exception is allowed in favor of said bankrupt, both as to the order denying him a discharge, and to this order denying his petition for rehearing." From the order so entered the bankrupt appealed to this court. Moriyama v. Allen (C. C. A.) 13 F.(2d) 117.

By reference to the reported opinion it will be seen that upon the appeal it was held simply that in his so-called "petition" or objection to discharge Allen had stated no statutory ground for denying a discharge, and that therefore the denial of the bankrupt's petition was wholly without warrant in law. This was the only question considered and the mandate which went down referred only to the order of October 30th, with directions for its reversal and the entry of "an order of discharge in conformity to law." It is well understood that a petition for a discharge initiates a distinct proceeding, the result of which, one way or the other, has no relation to the primary administration, the one purpose of which is to convert the property of the estate into money and distribute it to those who under the law are entitled thereto. And it is clear, we think, that that part of Judge James' order of October 8th, re-referring the estate for further administration, was in no wise affected by the judgment and mandate of this court.

In pursuance of the order of re-reference, the referee entered upon the further administration of the estate, appointed a new trustee, and, upon consideration of a petition for the sale of property presented by the trustee, made an order for such sale. But upon a petition for the review of this order, filed by the bankrupt, District Judge McCormick vacated it, and hence this appeal.

With this somewhat detailed statement of the facts an extended discussion is unnecessary. If it be assumed that the order of October 8, 1925, was valid when made, and continued in force, no serious question is made of the regularity of the proceedings taken before the referee thereafter. As already explained, this order, in so far as it has to do with the further administration of the estate, was unaffected by the former appeal; hence, if valid at all, it continued in force. And we have no doubt of its original validity.

[1] While neither as a special master nor as a referee did Collins have the authority to adjudicate Allen's claim, he did have the power, and it was his duty as special master, under the order of January 26, 1925, to inquire into and report upon Allen's relation to the estate. True, the ultimate inquiry was of the right of the bankrupt to a discharge; but necessarily involved in that inquiry was the question of Allen's competency to prosecute objections. To be competent, it was requisite that he be an interested party, that he have a financial interest in the estate (Bankruptcy Act, § 14b [11 U SCA § 32]), and if he was a mere interloper, with no right to object, further inquiry was unnecessary. As already indicated, the fil-

ing of the so-called amended creditor's claim and its allowance by the referee were without avail; but if, as upon investigation the special master found and reported, Allen had in fact seasonably filed his claim in due form, prima facie, at least he had the requisite status, and that would not be affected, nor could his rights be prejudiced, by reason of the loss of the filed claim through the negligence of a court officer.

[2] The Bankruptcy Act (11 USCA) prescribes no formal procedure for the reopening of an administration, the important requisite being only that in some competent manner the court be convinced that there are unadministered assets belonging to the estate. It may very well be that, if so satisfied, whatever the source of the information, the court could make a reopening order sua sponte. But, however that may be, the court here was formally asked for such an order, upon specific information, furnished by the master's report and exhibited in Allen's verified petition, to the effect that Allen was the holder of a valid claim duly allowed and unpaid, and that there were unadministered assets of the estate, which were specifically described. Without deciding that a bankrupt, who has professedly turned over all of his property for the benefit of his creditors and has been discharged, cannot be heard to object to the reopening of his estate, it is sufficient to say that the order here made by Judge James was at least within his competency, and, of course, so long as not reversed or modified by a reviewing court, it could not be set aside or ignored.

It must therefore be held that, in making the order of sale, the referee was acting within his jurisdiction, and accordingly the order appealed from is reversed, with directions to affirm the referee's order of sale. Costs to appellant.