**COHEN et al. v. KELLER.**
No. 95.

Circuit Court of Appeals, Second Circuit.
Jan. 2, 1940.

Walter H. Schulman, of New York City, for appellant.

Allan Kritz, of New York City, for appellees.

Before L. HAND, AUGUSTUS N. HAND, and CLARK, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The bankrupt appeals from two orders (1) entered on June 1, 1939, vacating an ex parte order of the District Court made on February 20, 1939 which had extended his time to file an application for discharge until March 16, 1939; (2) entered on June 23, 1939 denying his motion to fix a time within which his creditors should file objections to his discharge under Section 14, sub. b of the Bankruptcy Act as amended by the Chandler Act, 11 U.S.C.A. § 32, sub. b.

In my opinion the second order should be affirmed because Section 14, sub. b, is not made applicable to the proceeding by Section 6, sub. b, of the Chandler Act, 11 U.S.C.A. § 1 note, because it would not be "practicable" to require referees to mail notices in all proceedings pending in their offices fixing a time for filing objections to discharges of bankrupts. The question remains whether Section 14, sub. a, of the Act applies and the bankrupt was "unavoidably prevented" from filing his petition for a discharge within twelve months after the adjudication and therefore might properly obtain an extension so as to file his application within the next six months.

In the present case, within twelve months after the adjudication, the bankrupt executed his petition for a discharge and left it with his attorney (who was not the attorney representing him on this appeal) with directions to file it. He was prevented from filing solely by the mistake of his attor-

L. HAND, Circuit Judge, dissenting.

ney who insisted that it could not be made until the referee had determined certain disputes as to the rights of claimants to property of the bankrupt estate.

■ It seems to me that the selection of an attorney who is properly equipped to conduct bankruptcy proceedings can hardly be expected from the average bankrupt. Such a man is quite likely to go to the first lawyer that he knows and approves of in general, or who has been recommended to him, and to entrust that person with any law business. In most cases the bankrupt knows little about such business and in many his inquiries, if made, would lead to little sound advice. I am willing to distinguish our decision of In re Taylor, 2 Cir., 22 F.2d 499, where the attorney was not merely mistaken in his advice but was completely neglectful in the matter, from the present case. Here the bankrupt did everything he could by executing his petition for a discharge and directing his attorney to file it in time. The refusal of the attorney to file it because of a mistake of law was conduct, I believe, which bankrupts cannot be expected to control. Such conduct, I think, constituted unavoidable prevention of the bankrupt. The order vacating the extension of time to file an application for discharge is reversed.

CLARK, Circuit Judge, concurs in a separate opinion.

L. HAND, Circuit Judge, dissents, with opinion.

CLARK, Circuit Judge (concurring).

I think, too, that this bankrupt should still have an opportunity to seek his discharge, though in reaching this conclusion I have been more influenced by the trend of judicial and legislative thinking than have my brethren. Perhaps the stern logic of In re Taylor, 2 Cir., 22 F.2d 499, pressed to its end, may suggest a different result, but I do not believe we are longer justified in following that case as a beacon. As early at least as In re MacLauchlan, 2 Cir., 9 F.2d 534, it was recognized that we applied a harsher rule than had found favor elsewhere; and although we were followed perforce by the district courts below, In re Ruane, D.C., 35 F.2d 187; In re Goldstein, D.C., 40 F.2d 539; In re Malta, D.C., 58 F.2d 771, and occasionally elsewhere, In re Balzer, D.C., 12 F.2d 94; In re Adams, D.C., 12 F.Supp. 755, on the whole the rule either invoked criticism or was not applied. Several cases therefore hold that the bankrupt shall not be denied the very objective for which he instituted the proceedings because of the mistake or inadvertence of his lawyer discovered within the additional six months granted by § 14 sub. a. In re Churchill, D.C., 197 F. 111; In re Swain, D.C., 243 F. 781; In re Waller, 7 Cir., 249 F. 187; In re Ewing, D.C., 8 F.Supp. 285; Burbank Lumber Co. v. Church, 9 Cir., 69 F.2d 896. Cf. In re Jacobs, 6 Cir., 241 F. 620; In re Whittaker, D.C., 57 F.2d 345; Schmelz Liquidating Corp. v. Williams, 4 Cir., 86 F.2d 167. And In re Schaefer, 9 Cir., 80 F.2d 387, was only a moderate approval of our view at most; for the court referred to the disagreement and held merely that it would not disturb the exercise of discretion below to the effect that miscounting of the months was no excuse.

With this background, Congress enacted the Chandler Act, which in § 14, sub. a, as amended, makes the adjudication an automatic application for discharge. The committee reporting the bill through Congressman Chandler stated specifically that the new provision "removes the troublesome and often harsh limitation of time within which the bankrupt may make" his application; it continued with a criticism of the "very serious hardship" which had made the bankrupt lose the benefit of the entire proceeding itself through some oversight on his part or on that of his counsel. H. R. Rep. No. 1409, 75th Cong., 1st Sess. (1937) p. 28. Legislative disapproval of the stern rule was therefore very clear. And since the adoption of the Chandler Act, except in this Circuit, judicial opinion seems to be unanimous in finding freedom from its harshness through application of the new procedure. The case of In re Farrow, D. C., 28 F.Supp. 9, noted with approval in 53 Harv.L.Rev. 132, goes farther than is here necessary, for it allows application even beyond eighteen months after adjudication. The new procedure was also applied in In re Holder, D.C., 29 F.Supp. 331, and In re Pontello, D.C., 29 F.Supp. 332 (contra in In re Cederbaum, D.C., 27 F.Supp. 1014), and it is said to be made applicable by general rule in the district courts in Northern Illinois and Minnesota. Glenn, Discharge, 14 J. Nat'l Ass'n of Referees in Bankruptcy 23, 25.

Here we have not so much an old statute read in the light of a later one as a rule of decision, originally debatable, now pretty thoroughly repudiated. In the short time

remaining for its operation, in order to prevent unfairness in the very few cases where it will still apply we ought to limit it to hold that a bankrupt is no longer fatally prejudiced in securing his discharge by mistake or even ignorance of his counsel—ignorance which would be the deeper, the more the literature of the subject and the decisions elsewhere were known. The words of former § 14, sub. a, alone would permit such holding, once we forget our legal ideas of an attorney as alter ego of the client and think of the practicalities of the situation. And as to bankruptcies adjudicated within the twelve months prior to the effective date of the Chandler Act (September 22, 1938), the procedure of that Act should apply, for that is surely a "practicable" course under § 6, sub. b.

I concur in the reversal herein.

L. HAND, Circuit Judge (dissenting).

My brothers think it best to overrule In re Taylor, 2 Cir., 22 F.2d 499, and I shall confine what I have to say in its defense to a small compass. A dissenting opinion is not the place for an analysis of those decisions that preceded and followed it; they seem to me very far from showing that its doctrine has been "now pretty thoroughly repudiated". As I read them, no decision of a circuit court of appeals (which has not itself been overruled by the same court) touches the point, and those in the district courts are divided. In principle, even if we accept Judge Geiger's gloss upon the phrase, "unavoidably prevented", in Re Churchill, D.C., 197 F. 111, as some courts have, I think that the bankrupt at bar should lose. Ordinarily, a client must accept the consequences of his attorney's neglect like any other principal. Perhaps the law ought to except bankrupts; if so, I may have been wrong in Re Taylor, supra, in suggesting that a bankrupt might be bound to follow up a dilatory attorney. I submit, however, that, if he is to be favored so far, at least he must show some modicum of diligence in selecting his attorney. The doctrine, respondeat superior, is often harsh, but if it is to yield, the most primary considerations of equity seem to me to require at least that much. I agree that it would be absurd to expect of a client an expert's judgment of his lawyer's qualifications, but I deny that a careful man makes no inquiry whatever about whom he retains. This bankrupt made none; so far as appears, he knocked at the first door. Had he inquired at all, he would have learned that the attorney he selected had had "very little practice in bankruptcy". If he had learned that, would anybody think that he should escape all consequences of retaining a man so totally ignorant of the merest rudiments of the subject as this man was? What we are holding is in effect that this bankrupt was "unavoidably prevented" from retaining a competent lawyer. To that I cannot agree, and I do not believe that it is any answer to say that the law must not be harsh on honest bankrupts.

I think the second order too was right, but since the first is to be reversed, I need not discuss it, except to call attention to the fact that in holding that the bankrupt could properly get an extension of time after September 22, 1938, we are disapproving Re Farrow, D.C., 28 F.Supp. 9, so far as it held, as it did hold, that the amendment to § 14, sub. a, 11 U.S.C.A. § 32, sub. a, deprived the bankrupt of that privilege. As I too disapprove that holding, I concur so far.