**In re TURNER.**
No. B–22602.

District Court, D. Oregon.
Oct. 21, 1940.

Neal W. Bush, of Hillsboro, Or., for bankrupt.

JAMES ALGER FEE, District Judge.

On August 12, 1937, Turner filed a petition to be adjudicated a bankrupt. Adjudication and reference were granted by the court upon that day. Meeting of creditors was called for October 11, 1937, but no trustee was appointed, since there were no assets except those claimed exempt. No creditors were present and no claims were filed. The case was then closed by the referee on October 13, 1937.

On August 8, 1940, Turner petitioned the court to reopen the case and to discharge him from all debts.

Under the statutes in effect at the time of the filing of the petition, the bankrupt had the absolute right to present a petition for discharge within twelve months after adjudication.[1] If he had been unavoidably prevented from filing in this first period, upon convincing the court of that fact, he was also granted by these enactments the right to file within the next six months.[1] If the bankrupt failed to file a petition for discharge within eighteen months after adjudication the right then passed from him forever.[2] If, therefore, the former enactments had remained in effect there would be no question but that the bankrupt in the instant case had lost this right since his petition was filed some three years after adjudication.

The Chandler Act, which amended the former statutes, provides that the adjudication constitutes an automatic application for discharge.[3] In all cases filed after Sep-

---

[1] Act of July 1, 1898, c. 541, § 14, 30 Stat. 550, as amended February 5, 1903, c. 487, § 4, 32 Stat. 797, and June 25, 1910, c. 412, § 6, 36 Stat. 839, 11 U.S.C.A. § 32.

[2] In re Fahy, D.C., 116 F. 239; In re Levenstein, D.C., 180 F. 957, 959.

[3] Act of June 22, 1938, c. 575, § 1, sub. a, 52 Stat. 850, 11 U.S.C.A. § 32, sub. a.

tember 22, 1938, the effective date of the amendatory act, these provisions were of their own force applicable. [3] The amendatory act further provided that the provisions thereof should "govern proceedings so far as practicable in cases *pending* when it takes effect; but proceedings in cases then *pending* to which" its provisions "are not applicable shall be disposed of conformably to the provisions" of the former statutes. [4] Either the "case" was pending at the effective date of the amendatory act or it was not. According to the record the "case" was closed by the referee on October 13, 1937, under the provisions of law.[5] No action could have been taken in the "case" without reopening thereof.

■ The bankruptcy acts under which adjudication was made had dual purposes. The intention was to convert the assets of the bankrupt into cash for distribution among creditors and then to relieve the honest debtor [6] of his indebtedness. Historically, [7] the discharge in bankruptcy was not the primary purpose of the "case" based on the petition for adjudication under the former act relating to bankruptcy, but a purely incidental one, [8] of which the main design was to permit equitable distribution of assets among creditors. These dual purposes were reflected further by the erection of diverse proceedings for distribution of assets and for discharge. [9] Neither initiation nor the closing of the "case" relating to the distribution of the property was dependent upon the filing or failure to file petition for discharge.[10] The process of distribution did not even depend upon the question of whether a discharge was justifiable under law or fact. Therefore, the referee had the power to close the case upon October 13, 1937, without regard to the question of discharge. Once closed, this "case" was no longer "pending" when the amendatory act was passed.

■ Quite conversely, a discharge could not be granted unless founded in adjudication. The application for discharge was an entirely separate and independent proceeding, [11] the maintenance of which was conditioned upon voluntary action by the bankrupt within the time limited by law, but this proceeding could be maintained so long as the adjudication remained effective, without regard to the proceedings to distribute the property. [12]

Since Turner did not exercise this power of filing for discharge before September 22, 1938, this distinct proceeding for discharge was not "pending" then either. Therefore, the amendatory act was not by its terms applicable to Turner's petition for adjudication or his application for discharge as a "case" then "pending".

■■ However, it was not the intention of Congress by this new legislation to deprive the bankrupt of the power to file for discharge strictly under the terms of the former act. [13] On the other hand, it was not the intention of Congress to deprive the creditors of any rights which accrued to them as a result of the failure of the bankrupt to file. Neither the right to file the application for discharge nor the rights of the creditors based upon failure to file within the time limited are procedural in character, but rather of substance. Recip-

---

[3] Act of June 22, 1938, c. 575, § 1, sub. a, 52 Stat. 850, 11 U.S.C.A. § 32, sub. a.

[4] Section 6, sub. b, Act of June 22, 1938, c. 575, 52 Stat. 850, 11 U.S.C.A. § 1, Note "Effective Date", etc.

[5] Section 2, sub. 8 of the Bankruptcy Act, as amended prior to June 22, 1938, 11 U.S.C.A. § 11, sub. 8.

[6] Williams v. United States Fidelity & Guaranty Company, 236 U.S. 549, 555, 35 S.Ct. 289, 59 L.Ed. 713.

[7] See Winter v. Hindin, 3 W.W.Harr. 294, 33 Delaware 294, 136 A. 280.

[8] In re Levenstein, supra, 180 F. page 958.

[9] Under the Chandler Act, this distinction between procedures is abolished. It will no longer be possible to close a bankruptcy case until the question of discharge is settled. The departure is a radical one. The purpose of Congress to make discharge a major feature of the amended act is well established. 75th Congress, 1st Session, (1937), 26–H.R. Rept. No. 1409.

[10] See In re Walrath, D.C., 175 F. 243, 245.

[11] Gilbert v. Shouse, 5 Cir., 61 F.2d 398, 399; In re Clisdell, D.C., 101 F. 246; In re Glass, D.C., 119 F. 509, 514.

[12] The right of a bankrupt to apply for a discharge is in no way affected by the progress of the settlement of his estate. In re Snell, D.C., 244 F. 613, 616.

The uniform practice of the referees in this district has been to close the proceedings immediately where there were no assets, and in assets cases immediately after administration was complete.

[13] Cohen v. Keller, 2 Cir., 108 F.2d 495, contra, In re Farrow, D.C., 28 F.Supp. 9.

rocal rights were based upon and inherent in the judicial act of adjudication,[14] which was a judgment and as such incorporated the terms and limitations of the law at that time in effect. It is doubtful that the Congress should have the right to destroy, by any act subsequent to the judgment which fixed them,[15] either the right of the debtor or the rights of the creditors.

In Re Cederbaum, D.C., 27 F.Supp. 1014, 1017, it is said:

"A procedural change cannot be applied unless there are substantive rights to which it may be applied. Here, the substantive rights of the parties have been finally determined just as effectively as if there had been an application for a discharge, hearing thereon and the entry of an order denying the discharge. There is no proceeding in the case to which the procedural change may be applied."[16]

▇ The opinions have generally disregarded the question whether a "case" was "pending" at the effective date of the new act.[17] No problem of strict or liberal construction is involved. The policy of the present legislation should not be injected into the former acts without specific congressional authority,[18] since a discharge improperly granted is void, because it is beyond the jurisdiction of the court.[19]

▇ Even if it be assumed that the "case" was pending at the time of the amendment, still it was not practicable to require a referee to send out notices in all cases then before him[20] without motion upon the part of anyone. Still less was it practicable to require a referee to send out notices in cases he had already closed under the provisions of the former law. The most workable construction of the amendatory acts in any event was to require the bankrupt to voluntarily file his petition for discharge if the twelve months had not elapsed at the effective date or to obtain permission from the court when this period had expired but within eighteen months after adjudication. However, if the petition had been so filed, then the truly procedural phases of the Chandler Act relating to notice to creditors, filing of objections, examination of the issues and burden of proof, could have been applied in its disposition.

The present petition must be denied. The bankrupt failed to file within the time limited by the former acts of bankruptcy under which his rights accrued. There was no case pending at the time of the effective date of the amendatory acts since the case had been closed by the referee on October 18, 1937. The separate independent proceeding for discharge had not been initiated at that date and on the effective date of the new act and therefore was not then pending. The mere fact that the bankrupt on proper showing might have been enabled to file application for discharge upon a finding by the court that he had been unavoidably prevented theretofore did not bring him within the terms of the amendatory acts. This solution is not only technically sound but has a practical foundation in that many bankruptcy cases which had been closed under the provisions of the former enactments may be resurrected years afterward and discharge claimed upon the ground that the referee was required automatically to send notices for hearing of petition for discharge if the eighteen months from adjudication had not expired at the effective date of the new legislation. The bankrupt, by his failure to file his petition under the terms of the statute, lost his right, and the rights of the creditors to pursue their ordinary remedies became fixed.

The petition to open the case and to grant discharge is denied.

---

[14] For analogous cases relating to fixing of rights of bankrupt and creditors as to assets, see United States v. Marxen, 307 U.S. 200, 207, 59 S.Ct. 811, 83 L.Ed. 1222; White v. Stump, 266 U.S. 310, 333, 45 S.Ct. 103, 69 L.Ed. 301; In re C. H. Earle, Inc., D.C., 2 F.Supp. 15, affirmed 2 Cir., 65 F.2d 1013.

[15] Adjudication in bankruptcy is a judicial proceeding. See cases in note 25, Paramino Lumber Co. v. Marshall, 309 U.S. 370, 381, 60 S.Ct. 600, 604, 84 L. Ed. 814.

[16] The attempt to explain this case by the fact that the court had adopted a rule is futile. See In re Jacobs, D.C., 31 F.Supp. 620. If the rule conflicted with the Chandler Act, the rule was void.

[17] In re Jacobs, supra; Cohen v. Keller, supra; In re Farrow, supra.

[18] See opinion of Clark, Circuit Judge in Cohen v. Keller, supra.

[19] In re Fahy, supra; In re Levenstein, supra.

[20] Cohen v. Keller, supra. This feature of practicability seems to have been overlooked in the cases of In re Totarello and In re Dougan, D.C., 33 F.Supp. 530, 531, where it is stated "The Chandler Act took effect September 22, 1938, at which time the instant cases were still pending * * *".