**PERLMAN v. 322 WEST SEVENTY-SECOND STREET CO., Inc.**

No. 220.

Circuit Court of Appeals, Second Circuit.

April 11, 1942.

Samuel Masia, of New York City (Archibald Palmer, of New York City, on the brief), for bankrupt-appellant.

Herbert E. Kaufman, of New York City (Arthur L. Newman, II, of New York City, on the brief), for creditor-appellee.

Before L. HAND, CLARK, and FRANK, Circuit Judges.

CLARK, C. E., Circuit Judge.

The bankrupt Perlman filed his voluntary petition in bankruptcy on May 24, 1941. 322 West 72nd Street Co., Inc., was scheduled as a creditor. Subsequent to the formal adjudication of bankruptcy, this creditor moved to dismiss the bankruptcy proceedings, or to exclude from consideration its debt and any others similarly situated. As grounds for its motion, it relied on a prior proceeding, involving this bankrupt and the same creditor, which had been dismissed without action respecting a discharge.

The prior proceeding was also begun by a voluntary petition followed by a formal adjudication of bankruptcy. The bankrupt failed, however, to deposit the $15 indemnity required before the first creditors' meeting would be called by the referee. Thereupon the referee recommended that the estate be closed, and the district court did so. Subsequently the bankrupt asked for a reopening of the proceeding, at which time he tendered the indemnity. His motion was granted initially, but a motion to vacate was later made by the same creditor opposing the instant proceeding. The district court's denial of the motion to vacate was appealed from, and we held by a divided court—the writer hereof dissenting—that it was an abuse of discretion to reopen the proceeding, and we accordingly reversed the denial of the motion to vacate. In re Perlman, 2 Cir., 116 F.2d 49.

■ The bankrupt then filed a motion in this Court for "leave to apply to the District Court to reopen the proceedings * * * and there to present new additional facts herein set forth." Accompanying papers on this motion have not been made a part of the record herein, but we have taken judicial notice of them from our own files. They stated that the bankrupt had given his attorney a sufficient sum to cover the indemnity, that the attorney failed to make the deposit, that the attorney was subsequently disbarred, and that the bankrupt was unaware of the course of events. An answering affidavit disputed many of these facts and tended to show that the bankrupt had had, or should have had, some knowledge of the matters relied on prior to his motion to reopen. The court which heard the motion (somewhat differently constituted than that which heard the original appeal) denied the motion without comment. Shortly thereafter the bankrupt filed this new petition in the district court. When the nature of the prior proceeding was disclosed to the referee, and when it was shown that no new creditors were scheduled, he directed that this petition be dismissed. The district court denied a petition to review and confirmed the order of the referee, and the bankrupt appeals.

■ The substantial question is whether or not the prior closing of the estate is res judicata in the sense that no debts scheduled in the first proceeding can be discharged in the second proceeding. Under the Bankruptcy Act as it stood prior to the amendments of 1938, it was uniformly held that no discharge of the previously scheduled debts could be granted. Freshman v. Atkins, 269 U.S. 121, 123, 46 S.Ct. 41, 70 L.Ed. 193, and cases cited; In re Schwartz, 2 Cir., 89 F.2d 172. The rationale was that, since a bankrupt had to apply for a discharge within twelve months, or under certain circumstances, eighteen months, any disposition of the proceeding without a discharge meant that one had been denied. And if a discharge was denied, debts obviously could not be scheduled again. Section 14 was amended in 1938 to provide that a petition in bankruptcy filed by any person except a corporation is to be considered an application for a discharge. 11 U.S.C.A. § 32, sub. a. The court then has the duty to fix a time for filing objections to discharge, with notice given to all interested parties. If no objections are filed, the discharge is automatically granted.

In view of these changes, the former rationale loses some of its force and a reconsideration of the problem is justified. It can, of course, be argued simply that dismissal of the proceeding operates as denial of the application for a discharge. In re Brown, D.C.N.H., 35 F.Supp. 619. But it can also be argued that, since the burden of going forward may then properly rest on creditors, their failure to keep the proceed-

ings open results in their loss of an opportunity to object, or that closing an unadministered estate simply restores the status quo. Reasons less purely formal would seem desirable to justify application of the doctrine of res judicata. We believe that they exist. The Supreme Court observed in Freshman v. Atkins, supra, that in voluntary proceedings the primary object of the bankrupt is to obtain a discharge. In this light, the least that can be expected of the bankrupt is that he carry the burden of seeing himself through. In many voluntary bankruptcies, creditors have nothing to gain from the liquidating process. To throw on them the burden of continuing the proceeding is to overstress the privilege granted the bankrupt. The House Report on the 1938 amendment indicates that the change is not to be read too strongly as a new privilege of the bankrupt. True, the report points out that the new wording saves a bankrupt from the misfortune of failure to get discharged through neglecting to apply in time. But it also notes that the new provision will "hasten the proceeding for discharge and prevent intentional delay by a fraudulent bankrupt until such time as creditors have lost interest in the bankruptcy and are less likely to oppose a discharge." H.R.Rep. No. 1409, 75th Cong., 1st Sess., 1937, 27. The report also points out that new provisions, § 14, sub. b, 11 U.S.C.A. § 32, sub. b, assure creditors that they will be protected from hasty granting of discharge before they have had full opportunity to determine whether or not there are grounds for denial. H.R.Rep. No. 1409, 75th Cong., 1st Sess., 1937, 28. These purposes ought not to be lost by permitting a bankrupt to drop one proceeding and start another later. Nor should creditors be required to keep the proceeding alive to prevent such action by a bankrupt.

■ This reasoning is strengthened and supported by the fact that the Bankruptcy Act itself contains provisions which in terms are directly applicable to this situation, and in purpose and effect seem appropriate to accord fully adequate protection to the bankrupt without unfair prejudice to the rights of creditors. In § 2, sub. a(8), 11 U.S.C.A. § 11, sub. a(8), bankruptcy courts are given power to close estates "not fully administered," when "the parties in interest will not furnish the indemnity necessary for the expenses of the proceeding or take the steps necessary for the administration of the estate"; and to "reopen estates for cause shown." Thus, the bankrupt has an opportunity within the original proceeding to correct errors, and is not irretrievably lost once his estate is closed. Further, this statutory scheme for closing and reopening estates indicates that disposition of an unadministered estate is something more than a wiping off of the proceeding. It demonstrates that once a court of bankruptcy is set in motion and then stopped by "closing the estate," the consequences are to be much the same, whatever the reason.[1] It follows, therefore, that a bankrupt whose estate is closed without his obtaining a discharge is in the same position as one whose discharge was denied.

■ Analogy to modern rules of procedure also supports this conclusion of res judicata. Under the Federal Rules of Civil Procedure, rule 41(b), 28 U.S.C.A. following section 723c—applicable to bankruptcies "as nearly as may be" by General Order 37, 11 U.S.C.A. following section 53—an involuntary dismissal of an action is with prejudice unless otherwise provided in the order of dismissal. Without deciding how far· "with prejudice" goes in a case such as this, we feel safe in saying that the primary object of dismissal with prejudice— preventing harassment of defendants— would be lost if a bankrupt could institute a series of proceedings without loss to himself. Once a person starts a bankruptcy proceeding he, like any other plaintiff, must suffer the consequences of failure to prosecute his cause.

■ Though the bankrupt has not so framed his petition, perhaps we should consider it as, or at least amendable to, an attempt to reopen the prior proceeding. This was done once, and the bankrupt lost in this Court. Under the Federal Rules of Civil Procedure, rule 60(b), however, a party may seek further relief where he can show "mistake, inadvertence, surprise, or excusable neglect." This rule, we have said, is applicable under General Order 37.

---

[1] How far this may carry—its applicability, for example, in a situation such as that disclosed in Lockhart v. Garden City Bank & Trust Co., 2 Cir., 116 F.2d 658, where the lien of a chattel mortgagee was held good as against a bankruptcy trustee without refiling of the instrument after adjudication—we should not now attempt to decide.

Kroell v. New York Ambassador, Inc., 2 Cir., 108 F.2d 294; In re Barnett, 2 Cir., 124 F.2d 1005. There is a question, of course, whether the bankrupt's later motion before us, referred to above, does not exhaust his opportunity to reopen. In the view of the writer of this opinion, at least, Federal Rules of Civil Procedure, rule 60 (b), does not require a preliminary petition in the appellate court for permission to reopen in the district court.[2] Be that as it may, we concur in the prior determination that the claimed newly discovered facts were insufficient to warrant reopening. Hence it would serve no useful purpose to allow the bankrupt to amend his petition to come within the requirements of the Federal Rules of Civil Procedure, rule 60(b). And since no new creditors were scheduled, it was proper for the district court to vacate the adjudication and dismiss the petition.

The judgment is affirmed.

---

[2] The rule is a new provision, taken from a California statute; it contains no such restriction in terms; the motion is irrespective of an appeal, for it "does not affect the finality of a judgment or suspend its operation"; and the rule is in addition to, and does not affect, the old bill of review. See 3 Moore's Federal Practice 3270–3276. The general purpose of the rules to avoid technical proceedings is well known; and the district court, not the appellate court, affords a place to make a record covering the requirements of the rule. Cf. Petterson Lighterage & Towing Corp. v. New York Central R. R., 2 Cir., 126 F.2d 992, 996.