## STERLING NAT. BANK & TRUST CO. v. BOYAJIAN.

### No. 240.

Circuit Court of Appeals, Second Circuit.

May 1, 1942.

Before AUGUSTUS N. HAND, C. E. CLARK, and FRANK, Circuit Judges.

Abraham Lillienthal, of New York City, for Boyajian, bankrupt-appellant.

Sidney Golding, of New York City, (Joel Gross, of Newark, N. J., of counsel), for Sterling Nat. Bank & Trust Co. petitioner-appellee.

AUGUSTUS N. HAND, Circuit Judge.

The appellant filed a petition in bankruptcy on January 22, 1934. After adjudication he was granted a discharge and, on September 17, 1934, the estate was closed. In December 1941, Sterling National Bank & Trust Company, a creditor, moved to reopen the proceeding on the ground that the bankrupt had concealed from the bank and from his creditors in general a fraudulent transfer made to his wife in 1930. The bankrupt answered the moving papers by filing an affidavit in which he not only said that the transfer was not fraudulent but made for an adequate consideration and also stated that the bank knew all about the circumstances and had for years slept on its rights. The district court granted the motion and entered an order opening the estate from which the bankrupt has appealed. We think that the order must be reversed with leave to the petitioner to present a more adequate record.

The petition to have the bankruptcy proceeding opened was made on December 1, 1941. It alleged that prior to November 18, 1930, the bankrupt Boyajian and his partners Perrusi, Kweit and Cassen, who were engaged in a printing business, transferred their partnership assets to a corporation which they organized under the New York law and "caused the stock of their corporation to be issued to their respective wives, said wives paying nothing therefor." The petition also alleged that Boyajian, from November 18, 1930, until the filing of his petition in bankruptcy on January 22, 1934, was the treasurer and a director of the corporation and "the

beneficial owner of 28% of the stock * * *"; that on November 18, 1930, he and his partners conspired to enrich themselves and to defraud their creditors by means of the above transfer and the issue of the stock to their wives without consideration. The petition further alleged that on September 25, 1930, the Central Zone Building Inc. gave its promissory note for $25,000 payable in three months to the Magoba Construction Co. Inc., which was endorsed by Boyajian, Perrusi, Kweit and Cassen and discounted for Magoba Construction Co. Inc. with Sterling National Bank & Trust Company, but had never been paid. On January 22, 1934, Boyajian stated in his bankruptcy petition that his liabilities totalled $697,-020.75 in which he included his indebtedness arising from his endorsement of the note to the Central Zone Building Inc., and that his assets consisted only of 200 shares of stock of Central Zone Building Inc., said to be worthless. He was granted a discharge on July 18, 1934, and the estate was closed on September 17, 1934.

The petition of Sterling National Bank & Trust Company to reopen the bankruptcy proceeding alleged that at the time the Advertising Agencies Service Co., Inc., was incorporated Boyajian's liabilities were approximately the same as those enumerated in his schedules on January 22, 1934, and that the transfer to his wife then left him with insufficient assets to pay existing creditors. It also alleged that Boyajian's copartners filed petitions in bankruptcy on January 22, 1934, and listed the same obligations as he did. In the examinations before the referee in each of the bankruptcy proceedings Boyajian's three partners asserted that each had no assets and he and they all failed to disclose a beneficial ownership in the stock of Advertising Agencies Service Co., Inc., which was alleged to have existed.

The bankrupt filed an affidavit in opposition to the petition to reopen the estate in which he stated that all the debts listed in his schedules "were liabilities on accommodation endorsements and a mortgage guarantee," which grew out of real estate ventures. He said that in 1930 his firm owed $17,500 to the Sterling Bank and $20,000 to the Marine Midland Trust Co. which were balances of aggregate advances of $50,000 that had gradually been reduced. These creditors insisted upon immediate payment and as a result he and his partners had to place a chattel mortgage on their plant and to assign their accounts receivable to a money lender, and also to obtain money from their wives for the new corporation to which the business was transferred through the issue of its stock. The wife of Boyajian contributed $4,000 from her own funds and from moneys which she borrowed. From the funds thus obtained the $37,500 demanded by the two banks was repaid. This investment was stated to be precarious because the business had pledged all its assets to meet Sterling and Midland demands. Boyajian said in his affidavit that he informed Pulvermacher, the president of the Sterling Bank that his demand for immediate payment "had forced the incorporation of the business and the raising of capital at great cost," that the Sterling Bank knew as much about his business as he did himself and that Pulvermacher, who is still its president, did not file the petition to reopen the bankruptcy estate, but an officer who was not connected with the bank when the pertinent events happened. Boyajian also stated that the foregoing transactions "were unrelated to the $25,-000 note mentioned in the petition or other liabilities listed in petitioner's schedules." All of these were based on accommodation endorsements or guarantees in which all of the parties to the building operations participated. These endorsements were deemed amply secured, since the building operations were completed and the buildings well rented. Boyajian also said that his "interest in the real estate did not become the property of the new corporation and deponent regarded the asset as a very valuable one." He added that his bankruptcy was caused by events transpiring after November, 1930, and that in 1932 he suffered a total loss of his real estate investments due to the general collapse of all real estate in that year.

It appears that petitions made to open the bankruptcy proceedings of Boyajian's partners Perrusi and Kweit made under circumstances almost identical with those here were denied by Judge Byers after complete hearings on oral testimony. In re Kweit, D. C., 43 F.Supp. 585, 587. He confirmed the report of the master who found that the Sterling Bank was ignorant of the issue of the stock to the wives of Perrusi and Kweit until October 2, 1941, but that: "This ignorance at the time of the bankruptcies was due to its own negligence and indifference in not consulting its own

records and inquiring in the bankruptcy proceedings." Judge Byers added:

"Adequate information was possessed by the Bank in its files, as was developed at the examination before the special master, and as is shown in part by the exhibit which is attached to the petition herein; that is a financial statement dated October 31, 1930, submitted by the copartnership, and recites the investment made by the partners in the real estate ventures to which reference has been made.

"This somewhat tedious recital of facts is made in order that it may appear that the recitals of conspiracy on the part of these bankrupts, contained in the respective petitions to reopen, are less than convincing when tested by the evidence. The corporation was not formed as part of a conspiracy to conceal assets, but in response to this Bank's insistence, which was probably entirely justified, upon the payment of its loan; that result could not be accomplished by the partnership or the individuals composing it, which the officials of the Bank well knew and clearly approved.

"It is not now apparent that, in November of 1930, it was obvious that the real estate corporations would default upon their obligations, thus rendering inevitable recourse to the endorsers.

"It is by no means clear, therefore, that a trustee would be successful in litigation having for its object the bringing into the bankrupt estates of the stock issued to the respective wives."

It seems most undesirable to have two of the four partners given a full hearing as to the transfers of the business of the partnership to the new corporation and the issues of its stock to the wives, while Boyajian's case is disposed of on what amounts to no more than pleadings; and particularly is this so when the results reached turned out to be different. Moreover, on the record submitted, Boyajian's answering affidavit presented a defense to the charges of the petition and the bank made no reply to Boyajian's allegations. In Kinder v. Scharff, 231 U.S. 517, 34 S. Ct. 164, 58 L.Ed. 343, the Supreme Court declined to sanction the reopening of a bankrupt's estate on ex parte affidavits in order to enable a trustee to sue upon a stale claim, even though the trustee charged that the bankrupt had conveyed away assets in fraud of creditors. In the case at bar a hearing based solely on conflicting affidavits was about as inconclusive as would have been one on ex parte affidavits. We think the determination of whether the bank's alleged cause of action has a reasonable prospect of producing any unadministered assets and whether it exercised diligence in asserting a claim, the basis of which was perhaps within its knowledge or might easily have been discovered, ought to be reached after an oral hearing in which there will be an opportunity to examine and cross examine witnesses. In re Graff, 2 Cir., 250 F. 997; In re Newton, 8 Cir., 107 F. 429. In the Perrusi and Kweit proceedings Judge Byers made the following observations:

"If there were a showing here of property actually owned by the bankrupt which, through mistake or other circumstance, or concealment, should be administered for the benefit of creditors, a different disposition would be appropriate, but all that these papers reveal is the possibility of litigation which might or might not be successful, and which would certainly involve preparation on both sides much more difficult in 1942, than would have been true in 1934, when the bankruptcy proceedings were closed.

* * * * *

"It is not mere lapse of time which stands in the way of granting this motion, but the lack of appeal to the equitable instincts of the bankruptcy jurisdiction. If the Bank had chosen wilfully to ignore the professed necessity for inquiry for over seven years, with the hope of rendering the preparation of an adequate defense difficult if not impossible in the matter of the production of records (both of the partnership and the real estate corporations for whom these bankrupts were endorsers), it could not have more completely accomplished its purpose than by following the course of conduct here exposed.

"I venture to think that such litigation as these motions envisage should not be encouraged by affirmative action of the court, under all the circumstances which have been brought to light."

In view of the foregoing considerations we hold that the order must be reversed and the proceeding remanded for the purpose of affording a more adequate hearing in case the bank desires to pursue its application further.

Order reversed with directions to proceed in accordance with the views expressed in this opinion.