In re ZIMMER.

No. 27037–Y.

District Court, S. D. California, Central Division.

Dec. 3, 1945.

Grainger & Hunt and John Van Aalst, all of Los Angeles, Cal., for bankrupt.

Charles I. Rosin, of Los Angeles, Cal., for creditor Levinson.

YANKWICH, District Judge.

Benjamin H. Zimmer, the bankrupt, filed a voluntary petition in bankruptcy on December 12, 1935. His schedules listed provable debts in the sum of $71,694.93. No assets were scheduled except household furniture, for which exemption was claimed. An order of adjudication was made on the same day. A trustee was appointed on January 14, 1936, at the first meeting of the creditors. On March 23, 1936, the final meeting of the creditors was held, at which the trustee reported that there were no assets. His report of exempt property was confirmed, the trustee was discharged and the estate was closed. On June 5, 1944, the bankrupt filed an ex parte petition to reopen the estate, in which he set forth the above facts and the following additional facts: No certificate of compliance was filed, and no final discharge was ever entered. Because of his incarceration in the State penitentiary, and the fact that he was on parole until February 2, 1941, and released from parole on February 22, 1941, he was not aware of the true condition of his estate until the 2nd day of June, 1944. Since his release on parole, he has worked diligently to build up a business owned by his wife. He did not ask for discharge, although one of the allegations of the petition was that if he is not successful in securing a final discharge "all his efforts in building up a business and future security for himself and family will be in vain, and he will be totally unable to make any restitution whatsoever," under the terms of a probation order of the United States District Court for this District, where he was convicted of violation of Sec. 88, 18 U.S. C.A.

While the original petition was filed in forma pauperis, in applying for reopening, the bankrupt expressed his willingness to pay any and all fees. The prayer of the petition asked that *"an order be made reopening the said above-entitled bankrupt estate for further administration";* that it be referred to the referee who had handled it originally; and for further relief. On June 5, 1945, the Honorable Paul J. McCormick, Senior Judge of this District, entered an order which read: "That the above-entitled matter be reopened and rereferred to Honorable Ernest R. Utley, Referee in Bankruptcy". *The order was secured without notice to any of the creditors.* And the bankrupt did nothing further in the matter. On April 18, 1945, over ten months after the reopening of the estate, Referee Hubert T. Laughran, to whom the matter was referred after the retirement of Referee Ernest R. Utley, made an ex parte order placing the matter on the calendar for April 25, 1945, for disposition. The bankrupt appeared on that day and asked that the Referee make an order setting for hearing and consideration the matter of his discharge. At the same time, he filed an affidavit setting forth substantially the facts alleged in his petition to reopen. On April 26, 1945, the Referee gave notice to creditors and other interested parties of a hearing to be held on May 2, 1945. On April 27, 1945, William Levinson, a creditor, filed a notice of motion to dismiss the proceeding, which he made returnable on May 2, 1945. The motion gave these grounds: (1) That the bankrupt had no right to reopen the estate; (2) that there was no showing of the existence of additional assets; and (3) that the bankrupt had been guilty of laches in petitioning for a discharge. In conjunction with the hearing of the matter, Levinson also filed an affidavit in which he recited that, during the pendency of the bankruptcy, he had investigated the affairs of the bankrupt, and in 1936, had available witnesses and evidence to prove that the bankrupt had not disclosed to the bankruptcy court all his assets, but that by reason of the long lapse of time, such evidence could not be produced in 1945. After a full hearing, the Referee, on May 24, 1945, made an order dismissing the proceeding. This is the petition of the bankrupt to review the order.

The question to determine is whether the reopening of the estate was sufficient to reinstate the right to discharge.

We start with September 22, 1938, the effective date of the Bankruptcy Act of 1938. Under Section 14 of the old Bankruptcy Act, the application for discharge had to be made within twelve months after adjudication, but an additional extension of

six months could be secured. Sec. 14, Old Bankruptcy Act, 11 U.S.C.A. § 32. Section 6(b) of the Bankruptcy Act of 1938, 11 U.S.C.A. § 1 note, makes the provisions of the Act applicable "so far as practicable in cases pending when it takes effect." In Re Farrow, D.C.Cal. 1939, 28 F.Supp. 9, 10, I held that, under this provision, and because adjudication now automatically operates as an application for discharge, Bankruptcy Act of 1938, Sec. 14, 11 U.S.C.A. Chap. 3, § 32, discharge could be granted under the new law to a bankrupt whose petition was pending at the time of the passage of the Act, although the actual discharge was not granted until eighteen months after the adjudication. The ruling in that case has the approval of the Circuit Court of Appeals for the Ninth Circuit (In re Wara, 9 Cir., 1940, 116 F.2d 447), of many district courts (In re Holder, D.C.Ga. 1939, 29 F.Supp. 331; In re Jacobs, D.C.N.Y. 1940, 31 F. Supp. 620; In re Pettis, D.C.R.I. 1941, 39 F.Supp. 931; In re Sgro, Referee, D.C. Ohio 1941, 48 A.B.R.,N.S., 769; and see Mueller v. Elba Oil Co., 1942, 21 Cal.2d 188, 196, 130 P.2d 961), and of writers on bankruptcy (see Note 53, Harvard Law Review, 1939, 132, 133; Collier on Bankruptcy, 4th Ed., pp. 1257, 1259).

█ Here the Referee was asked to hold that, even in a case which was not pending when the Bankruptcy Act of 1938 went into effect, the bankrupt could recapture the right to discharge by reopening the case *for that purpose.* I think the referee was right in dismissing the proceeding. In Re Turner, D.C.Or. 1940, 36 F.Supp. 655, and in Re Goodstein, D.C.Pa. 1945, 59 F.Supp. 685, *the courts held that cases which had been closed or in which, at the time the Bankruptcy Act of 1938 went into effect, more than eighteen months had elapsed from the time of the adjudication, were no longer pending within the meaning of Section 6(b) of the Act.* 11 U.S.C.A. § 1 note.

█ This interpretation is consonant with the intention of the Congress. The Congress, had it so chosen, might have pro-

vided that any case, in which a discharge had not been granted, could be reopened for the purpose of such discharge. But *it did not do so.* It merely provided that, so far as practicable, the new Act shall apply to pending proceedings. And the courts, in the decisions which I have cited, interpreted the provisions liberally, so as to give to certain bankrupts a new starting point from the effective date of the Bankruptcy Act of 1938, if their cases were still pending and the eighteen months' period within which application for discharge might have been made under the old Act had not expired on September 22, 1938. To extend this principle beyond this and hold that a bankrupt might, *eight years after his estate was closed,* file a petition to reopen and then, *without bringing in any new assets or having any further administration,* recapture what had been forfeited by lapse of time, would be to revive a right which was lost.[1] It would result in courts placing a premium on negligence and failure to the detriment of a fair administration of the bankruptcy law. The bankrupt argues that by the reopening of the estate, the right to apply for discharge was revived. Prior to the Amendment of Section 2, sub. a (8), of the Bankruptcy Act of 1938, 11 U.S.C.A. § 11 sub. a(8), the provision for reopening read: "And reopen them (estates) whenever it appears they were closed before being fully administered." The clause now reads: "and reopen estates for cause shown." The effect of the change is to give greater power to the bankruptcy court in reopening estates. Collier on Bankruptcy, 4th Ed., p. 230; In re Perlman, 2 Cir., 1940, 116 F.2d 49; In re Butts, 2 Cir., 1941, 123 F.2d 250; Perlman v. 322 West Seventy-Second St. Co., 2 Cir., 1942, 127 F.2d 716; Colwell v. Epstein, 1 Cir., 1944, 142 F.2d 138, 156 A. L.R. 836.

It is significant, however, that in the cases just cited, the courts were dealing with the right to reopen estates closed for mere failure to pay fees. They announced a liberal policy in that respect so as to give the bankrupt the benefit of his discharge. None

---

[1] The Circuit Court of Appeals for the Second Circuit has interpreted the discharge provision of the Bankruptcy Act of 1938 less liberally than our own Circuit Court of Appeals and district judges, including myself. In Cohen v. Keller, 2 Cir., 1940, 108 F.2d 495, Judges Clark and Learned Hand disapproved In re Farrow, in so far as it permits a discharge after the expiration of twelve months where no application for extension had been made under the old Act. Judge Augustus Hand reaches the same conclusion, although he makes no reference to my decision. However, a majority of the Court granted relief to the bankrupt because of the culpable mistake of his attorney in not applying for discharge within the twelve months' period.

of these cases, and no case which has been called to my attention, holds that there can be a reopening of a case filed prior to the effective date of the Bankruptcy Act of 1938 for no other purpose than to reinvest the bankrupt with the right to discharge. My attention has been called to the decision of Referee Samuel F. Hollins of Fresno, California, in our Northern Division, in the Matter of Michel, 1943, 54 A.B.R.,N.S., 476, 480, in which he states: "Prior to the Chandler Act it is doubtful whether a case could be reopened merely to give the bankrupt an opportunity to get his discharge. That doubt has been removed and a case can be reopened just to give the bankrupt a discharge." No authority is given for the statement. The proceeding before the Referee was instituted in 1941. So it was governed by the new Act, and the Referee actually denied the petition to reopen.

I need not decide here whether a bankruptcy proceeding under the Bankruptcy Act of 1938, which has been closed, can be reopened solely for the purpose of securing a discharge. But assuming that such right exists, it does not necessarily follow that we can extend it so as to resurrect estates which were dead at the time the Act went in effect. This would fly in the face of the principle that *"a bankrupt whose estate is closed without his obtaining a discharge is in the same position as one whose discharge was denied."* Perlman v. 322 West Seventy-Second St. Co., 2 Cir., 1942, 127 F.2d 716, 718. (Emphasis added.) And when discharge is denied, or is lost by dismissal, of the application or petition, there can be no revival of it, either by a second application or by a new proceeding in bankruptcy, involving the same debts. The first denial is res judicata binding alike on bankrupt and creditors. 7 Remington on Bankruptcy, 5th Ed., §§ 3184, 3457; Freshman v. Atkins, 1925, 269 U.S. 121, 46 S.Ct. 41, 70 L.Ed. 193; In re Fiegenbaum, 2 Cir., 1903, 121 F. 69; In re Kuffler, 2 Cir., 1907, 151 F. 12; Pollet v. Cosel, 1 Cir., 1910, 179 F. 488, 30 L.R.A.,N.S., 1164; Holmes v Davidson, 9 Cir., 1936, 84 F.2d 111, 113; Hill v. Railroad Industrial Finance Company, 10 Cir., 1937, 92 F.2d 973; Federal Land Bank v. Howell, 10 Cir., 1941, 123 F.2d 50, 51; In re Brown, D.C.N.H. 1940, 35 F.Supp. 619. The petition to reopen did not recite that there were other assets to administer. And, while it referred to the harm which would result to the bankrupt if he were not to secure his

discharge, the prayer *did not* mention discharge at all. Neither did the order. As appears from the fact summary already given, the prayer sought reopening for further administration. So that, while the petition apparently sought the benefits of the Bankruptcy Act of 1938, the prayer conformed to the old law, which postulated the existence of further assets to administer. Sec. 2 sub. a(8), Bankr. Act of 1938, 11 U.S.C.A. § 11, sub. a(8); Remington on Bankruptcy, 4th Ed., §§ 2971-2977; Doyle v. Ponsford, 8 Cir., 1943, 136 F.2d 401; In re Forman, D.C.N.Y. 1942, 45 F. Supp. 295. Having chosen that ground for reopening, the bankrupt cannot complain that the Referee, when he found nothing to administer, dismissed the proceeding. For the order either meant what it said or concealed from the court its true purpose, *which was not to secure further administration of assets, but to revive the right to discharge. Entertaining a petition for discharge is not administration.* On the assumption that persons, even bankrupts, act honestly before courts, I cannot believe that the bankrupt, when he filed his petition, deliberately sought to mislead the Court. So that, when Judge McCormick's order be considered in conjunction with the petition, it is quite apparent that he was not called upon to determine whether reopening could be had for no other purpose than securing discharge. If the right to discharge was involved and was adjudicated by the order, the creditors were entitled to notice, both under the old and the new law. Such notice is jurisdictional. See: Rash v. Metzger, 3 Cir., 1929, 31 F.2d 424; In re Stilwell, 2 Cir., 1941, 120 F.2d 194. A petition for reopening is not governed by any formal procedure, and it may be made ex parte. But before the objecting creditors are bound by its terms, it must appear that they had notice of it and failed to have it set aside. An ex parte order of this character is not reviewable. In re Snyder, 9 Cir., 1925, 4 F.2d 627; Schofield v. Moriyama, 9 Cir., 1928, 24 F.2d 473; Sterling National Bank & Trust Co. v. Boyajian, 2 Cir., 1942, 127 F.2d 713; Doyle v. Ponsford, 8 Cir., 1943, 136 F.2d 401.

The record does not show that, after securing the order, the bankrupt gave notice or did aught to apprise the creditors and others interested that the estate had been reopened. In fact, the contrary appears. The certificate of the Referee shows

conclusively that the bankrupt did nothing for over ten months after securing the ex parte order. The first notice which the creditors had of it was when the Referee, on April 26, 1945, gave notice to them of a hearing for May 2, 1945. The very next day, April 27, 1945, the objecting creditor filed his notice of motion to dismiss the proceeding and supported it by his affidavit. So the whole matter comes down to this: The prayer of the bankrupt himself for re-opening contemplated further administration. For ten months after securing the ex parte order, he gave no notice to anyone who might object. When the first notice was given, the objecting creditor, by moving to dismiss the proceeding, made the objection which he would have made to the re-opening had the application been made on notice. See: Kinder v. Scharf, 1913, 231 U.S. 517, 34 S.Ct. 164, 58 L.Ed. 343; In re Snyder, 9 Cir., 1925, 4 F.2d 627; Schofield v. Moriyama, 9 Cir., 1928, 24 F.2d 473; Sterling National Bank & Trust Co. v. Boyajian, 2 Cir., 1942, 127 F.2d 713; Doyle v. Ponsford, 8 Cir., 1943, 136 F.2d 401. On such objection, the Referee found (on the record before him) that there had been long delay in the original proceeding and a delay of over ten months after re-opening, which was detrimental to the objecting creditor—laches, in other words (See: 6 Remington on Bankruptcy, 4th Ed., § 2977; In re Kweit, D.C.N.Y. 1942, 43 F. Supp. 585; In re Forman, D.C.N.Y. 1942, 45 F.Supp. 295); that there were no assets to administer; and that the right to discharge having been lost long prior to the enactment of the Bankruptcy Act of 1938, the case was not pending on September 22, 1938. He, therefore, rightly dismissed the proceeding.

His order so doing is affirmed.