## NEW YORK, N. H. & H. R. CO. v. RECONSTRUCTION FINANCE CORPORATION.

### No. 121, Docket 21501.

United States Court of Appeals
Second Circuit.

Argued Jan. 11, 1950.

Decided Feb. 3, 1950.

Berle, Berle, Agee & Land, New York City (Adolf A. Berle, Jr., Robert H. Seabolt, Edward K. Mosenthal, of Berle, Berle, Agee & Land, New York City, George E. McConley, Assistant General Counsel, W. Mèade Fletcher, Jr., Chief Railroad Counsel, Washington, D. C., of counsel), for Reconstruction Finance Corporation.

Hermon J. Wells, New Haven (Arthur L. Corbin, H. H. Corbin, New Haven, Conn., of counsel), for New York, N. H. & H. R. Co.

Before L. HAND, Chief Judge, and AUGUSTUS N. HAND and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

This is an appeal by the respondent, the Reconstruction Finance Corporation, from an order in a proceeding to reorganize the New York, New Haven & Hartford Railroad Company under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205. On July 11, 1946, the trustees of the road filed

a petition (No. 891) to compel the respondent to accept four per cent interest upon notes held by it, instead of the five per cent reserved. The respondent answered, the case came on for hearing before Judge Hincks, who dismissed the petition; and on December 7, 1947, we filed an opinion affirming the order. Our mandate went down on December 20th, and on May 19, 1948, the reorganized successor of the road filed a new petition for the same relief. The respondent filed its answer on September 17, 1948, and on March 4, 1949, Judge Hincks entered an order granting the relief prayed; that is the order now on appeal. Our opinion on the former appeal [1] states the facts in detail and to it we refer for an understanding of the discussion which follows.

In the appeal in the proceeding under Petition No. 891 the trustees in their reply brief had raised for the first time, as an alternative ground for reversal, that the notes were payable in New York, whose statute [2] validates a written promise to discharge a contract, though it be made without consideration. We refused to consider the point, because it had been raised too late; but we concluded our discussion as follows, 164 F.2d page 468: "Whether the point will be open in the district court after this appeal, we do not say; nor do we indicate any opinion on the merits." The present petition (No. 1029) raises the same question together with another ground of recovery: i. e., that § 122 of the Negotiable Instruments Law Pub.Acts Conn. 1897, c. 74, made the letter of December 21, 1938, a valid release of the interest in dispute. The respondent objected below, and objects here, to the order; first, because the bankruptcy court had no jurisdiction to change the order entered on our mandate, which therefore was a bar to the present claim; second, that being a federal agency, its transactions were not subject to New York law, but to "federal common law"; third, that § 122 of the Negotiable Instruments Law did not cover the situation; and fourth, that, if it did the allowance of the claim was a judgment to which that statute does not apply.

The question of jurisdiction depends upon whether the "Consummation Order" of September 11, 1947, foreclosed any consideration of Petition No. 1029. By virtue of § 57, sub. k of the Bankruptcy Act, 11 U.S. C.A. § 93, sub. k, the allowance of claims remains interlocutory until the "estate has been closed"; and subdivision (l) of § 77 makes § 57, sub. k, applicable to railway reorganizations, in spite of General Order 49. The "Consummation Order" provided for this particular claim; for, when Article I(6) directed the trustees to pay to the respondent the principal and interest on the notes, and directed the respondent to turn back the collateral, it added that, "if the final determination of the Bankruptcy Trustees' appeal * * * is contrary to" the order which had already dismissed the first petition, the respondent must "refund * * * in cash such amount as may be required as the result of such contrary final determination." Moreover, Article XI, 2, (f), of the "Consummation Order" reserved jurisdiction over all claims which had been provided for in the Plan, "the amount of which shall not then have been fixed." It follows that, if we had reversed the order and sent the case back, the district court would have had jurisdiction to proceed on Petition No. 891. Moreover, when we affirmed the order, Judge Hincks might have asked our consent to reopen the proceeding under the original petition and, had we consented, any order he made would have been a "final determination of the Bankruptcy Trustees' Appeal."

Rule 60(b) (1), Federal Rules of Civil Procedure, 28 U.S.C.A., would have given him discretion to relieve the trustees from their "excusable neglect" in failing to adduce all the appropriate legal grounds to support their claim; and it is obvious that he would have exercised his discretion in their favor; indeed, it would have been an abuse of it not to do so. Thus, if in our disposition of the appeal from the order dismissing Petition No. 891,

1. Palmer et al. v. Reconstruction Finance Corporation, 2 Cir., 164 F.2d 466.

2. § 33, subd. (2), New York Personal Property Law, Consol.Laws, c. 41.

we dispensed with the need of asking our consent to entertain the trustees' claim upon the grounds now advanced, the objection to Judge Hincks' jurisdiction comes down to one of mere procedural form, on which we should be unwilling to rest decision. It is quite true that, when we affirmed the order dismissing Petition No. 891, we gave no express consent to reopen the order; nevertheless it is impossible to read what we said without seeing that we contemplated a possible continuation of the litigation; and that we left it open whether an application to reopen it would be unsuccessful. That could only mean that Judge Hincks was to consider any application free from any restriction which our affirmance would otherwise have imposed upon him. It would therefore have been an idle gesture for him to ask our consent to proceed; we had already given it. There is every reason so to construe what we said; indeed, we could have considered it by reargument on the record before us, for the rule that an order will not be reversed upon a point first raised upon appeal is not absolute, in spite of our unconditional statement to the contrary. Hormel v. Helvering [3]—one of the decisions which we cited —reversed the order upon such a point. For the foregoing reasons we hold that Judge Hincks was free to consider Petition No. 1029; and it follows that the order which dismissed Petition No. 891 was not a bar. We do not decide whether § 2, sub. a(8) of the Bankruptcy Act, 11 U.S. C.A. § 11, sub. a(8), would also be a ground of jurisdiction.

■ Upon the merits we will not decide whether the legal effect of the letter of December 21, 1938, is governed by § 33 (2) of the New York Personal Property Law. Recent decisions of the Supreme Court [4] make it apparent that state statutes and state decisions are an unsafe reliance in dealing with the rights and liabilities

of corporations, which are federal agencies, even though they be organized under a state law, and made subject to suit like a private corporation. We do hold that the letter of December 21, 1938, was a "renunciation" within the meaning of § 122 of the Negotiable Instruments Law, and released the road and the trustees from the payment of one per cent of the stipulated interest. That question breaks down into three parts: (1) whether the act is "federal," as well as state, law within the meaning of the decisions we have cited; (2) whether the letter fulfilled the condition of § 122; (3) whether, if so, the claims were at that date still to be regarded as "negotiable instruments" to which § 122 applied. The answer to the first question need not detain us. The purpose of the doctrine that the transactions of such corporations are not subject to state law, is that such agencies, being national in their scope and aim, shall not be forced to shape their transactions to conform to the varying laws of the places where they occur, or are to be carried out. Uniformity is thought to be essential to the convenient and speedy dispatch of their operations. However, the Negotiable Instruments Law has been enacted in every state of the Union, as well as in the District of Columbia; it is a source of "federal law"—however that phrase may be construed—more complete and more certain, than any other which can conceivably be drawn from those sources of "general law" to which we were accustomed to resort in the days of Swift v. Tyson.[5] So far as it applies to the letter of December 21, 1938, it will therefore determine the rights of the respondent and the liabilities of the present petitioner, for it is New York law as well as "federal law."

■ The second question is whether, if the letter was written while the notes were still in existence, it released the Trustees

3. 312 U.S. 552, 61 S.Ct. 719, 85 L.Ed. 1037.

4. Deitrick v. Greaney, 309 U.S. 190, 60 S. Ct. 480, 84 L.Ed. 694; D'Oench, Duhme and Co., Inc. v. Federal Deposit Insurance Corp., 315 U.S. 447, 62 S.Ct. 676,

86 L.Ed. 956; United States v. Allegheny County, 322 U.S. 174, 64 S.Ct. 908, 88 L.Ed. 1209; United States v. Standard Oil Co., 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067.

5. 16 Pet. 1, 10 L.Ed. 865.

according to its terms. Section 122 is made up of four sentences: the third concerns the effect of "renunciation" upon the rights of a "holder in due course" and is not involved. The letter of December 21, 1938, being a writing, satisfied the requirement of the fourth sentence. Since it did "expressly renounce" rights against the debtor—the maker of the notes—it satisfied the first sentence, unless a renunciation under that sentence must be "absolute and unconditional," as it must be under the second sentence. Williston says of the second sentence [6] that it "apparently restated the common-law rule that a release under seal of a negotiable instrument, if made before maturity, did not extinguish the instrument as to a subsequent holder in due course," although the third sentence has made it unnecessary for that purpose. On the other hand, the second sentence does add a new ground of discharge to those mentioned in § 119, and as such, it discharges parties secondarily liable—§ 120 (1). The only possible question is whether the limitation upon a renunciation, contained in the second sentence, should be imputed to the first sentence, whenever the renunciation is at or after maturity. The result of this would be either to limit the first sentence to the period before maturity, or to make its words have one meaning before, and another after, maturity. Neither hypothesis is permissible. The sentence expressly applies after maturity; and the same words cannot change their meaning. Hence, even though the result may be to make the second sentence redundant, we must give the first sentence the unlimited scope to which the words are entitled, and hold that it covers a conditional renunciation after maturity, unless the authorities have construed it otherwise.

The decisions are few and do not help very much. The respondent invokes a dictum of the New York Court of Appeals in Bank of United States v. Manheim,[7] where the only point for decision was whether an oral release, given for con-

sideration, was valid notwithstanding § 122; although the court said in the opinion "that renunciation, unsupported by a consideration, can be effected only by such a writing as demonstrates a present, absolute, and unconditional intention to renounce." This language was used to contrast a renunciation with, and without, consideration; but apparently the judge did suppose that all renunciations under § 122 had to be unconditional. With deference, this was plainly inadvertent; and we cannot follow it. In Leask v. Dew,[8] the holder of a note had left among his papers a letter addressed to his executors in which he said that it was his "wish" that a note in his possession should "be cancelled in case of my death and if the law does not allow it I wish you to notify my heirs that it is my wish and order." The court held that this was not an "express" renunciation with § 122; and it might have also held that a renunciation, like a release, presupposes some communication by the releasor to the releasee. In any event the decision is not relevant here. Dickinson v. Vail,[9] a decision of the Kansas City Court of Appeals, is the only case we have found which is in point. It held that a conditional renunciation after maturity was good under the first sentence of § 122, refusing to treat the second sentence as creating an exception. Thus it appears that there is nothing in the books, except the dictum we have mentioned, which contradicts the interpretation we put on the first sentence; and we are free to follow our interpretation of § 122, unless the notes were merged in the claims, and became "judgments," when "allowed."

The respondent filed a claim on the notes on February 27, 1936, and amended it on April 30. No order was ever entered "allowing" the claim, and none was necessary, for § 57, sub. d, provides that "claims which have been duly proved shall be allowed upon receipt by or upon presentation to the court." Section 57, sub. k, provides for their reconsideration at any time be-

---

6. Williston on Contracts, § 1192.
7. 264 N.Y. 45, 48, 49, 189 N.E. 776, 777.

8. 102 App.Div. 529, 92 N.Y.S. 891, affirmed 184 N.Y. 599, 77 N.E. 1190.
9. 199 Mo.App. 458, 203 S.W. 635.

fore "the estate has been closed"; but no section requires an order of "allowance," at least unless objection is made when they are first received by, or presented to, the court—§ 57, sub. d. How far the "allowance" so provided has the effect of a judgment is by no means wholly clear; but for the purposes of the case at bar we will assume that unsecured claims, when "allowed," are to be considered as reduced to judgment.

 On the other hand, § 57, sub. e, provides that secured claims shall be only "temporarily" allowed; and then only for purposes of voting, and at amounts which "seem" to the court to represent the deficiency of the security to pay them in full. Section 57, sub. h, provides for the liquidation of the security, which is to be, either in accordance with the terms of the agreement between the bankrupt and the creditor, or by compromise, or litigation, "as the court may direct." The important thing is that there is to be no "allowance" —except the "temporary" one—until the value of the security has been ascertained, and that, when it has been ascertained, is to be "credited" upon the claim and dividends are to be paid only upon the balance. Thus there could be not final "allowance" of the claim in suit until the amount of the security had been appraised, which involved as one factor the interest in dispute. All of that interest fell due after the claim was filed, because the payments which had been made up to the time of filing—February 27, 1936—were accepted in full satisfaction of interest due until then. Moreover, the respondent in the claim did not ask for interest after petition filed, and would not have been entitled to any, because, for any such interest, it had to rely upon the security itself. And this it could do, for any earnings of the security after petition filed, would not be added to its "value" until there had been deducted from them all interest due on the notes over the same period.[10] The notes were the only possible source of that interest and were

not merged in any "allowance," for there never was an "allowance," as we have said. The Negotiable Instruments Law therefore still covered them, as it does all negotiable instruments; and the letter was a good renunciation. In what we have said we have assumed for argument that if the notes had ever been merged in a judgment, § 122 would not have applied; but we are not to be understood as so holding.

 Finally, it was proper to allow interest against the respondent and in favor of the petitioner upon the amount recovered by the order. That interest should be computed at the rate allowed by the laws of Connecticut;[11] and we assume that the interest in fact allowed was so computed. If it does not, the amount must be corrected.

Order affirmed.

---

10. Sexton v. Dreyfus, 219 U.S. 339, 346, 31 S.Ct. 256, 55 L.Ed. 244; United States v. Sampsell, 9 Cir., 153 F.2d 731, 736.

11. Baltimore & Ohio R. R. Co. v. United States, 279 U.S. 781, 49 S.Ct. 492, 73 L.Ed. 954.