226 F.2d 608
 Lewis H. SAPER, as Trustee in Bankruptcy of the Estate of
John Viviane & Son, Inc., Bankrupt, Petitioner-Appellant,
v.
Barbara VIVIANI, Nathan L. Goldstein, Joseph Z. Goldstein,
and the Comptroller of the City of New York,
Respondents-Appellees.
 No. 129, Docket 23776.
 United States Court of Appeals Second Circuit.
 Argued Oct. 3, 4, 1955.
Decided Oct. 31, 1955.
 
 I. Arnold Ross, New York City, for petitioner-appellant.
 James R. Curreri, New York City, for respondent-appellee Barbara Viviani.
 Nathan L. Goldstein and Joseph Z. Goldstein, New York City (Jacob L. Fischer, New York City, of counsel), respondents-appellees pro se.
 David Roemer, Deputy Asst. Corp. Counsel, and Peter Campbell Brown, Corp. Counsel, New York City, for respondent-appellee Comptroller of the City of New York.
 Before CLARK, Chief Judge, and MEDINA and LUMBARD, Circuit Judges.
 CLARK, Chief Judge.
 
 
 1
 On March 20, 1936, John Viviane & Son, Inc., also known as John Viviani & Son, Inc., filed its voluntary petition in bankruptcy and schedules, and paid the required filing fee. It was thereupon duly adjudicated bankrupt and the matter was referred to Referee in Bankruptcy Stephenson. Since neither bankrupt nor any of its creditors came forward with the indemnity necessary for the expenses of the proceeding, the referee on December 3, 1936, filed a certificate closing the estate, as provided in the amended Bankruptcy Act § 2a(8), 11 U.S.C. § 11(a) (8). Early in 1952 the bankrupt conveyed a certain piece of realty which it had included in its schedules as an asset to Barbara Viviani, the wife of the president, and the deed was duly recorded. The City of New York condemned the premises on April 15, 1953, for housing purposes; and the condemnation resulted in a decree for an award to Barbara Viviani in excess of $51,000. While the condemnation was pending she retained Nathan L. and Joseph Z. Goldstein as her attorneys, and they eventually instituted a proceeding in the Supreme Court of New York for an order directing the City to pay a portion of the award to them in satisfaction of their attorneys' lien. The City then raised question as to the validity of title to be conveyed in the light of the bankruptcy; and on January 10, 1955, the bankrupt presented its petition for the reopening of the proceeding. On February 8, 1955, the court signed a formal order of reopening and referred the matter to Referee Stephenson; and the bankrupt then made a deposit of $45. The first meeting of creditors was noticed for March 29, 1955, but none appeared; and the referee of his own motion on April 5, 1955, appointed the petitioner herein as trustee.
 
 
 2
 Thereafter the trustee filed his present petition seeking the condemnation asset as property of the estate and asking for injunctions against payments by the City to either Barbara or the Attorneys Goldstein. The City answered in effect assuming the position of stakeholder, while the others answered denying any present title in the trustee. Following the allegations of the bankrupt's petition for the reopening, Judge Dimock concluded that all creditors had been paid, and held in a reasoned opinion that the creditors had abandoned the asset by failing to take any steps in the interim period. Hence he denied the petition and vacated the preliminary injunctions, D.C.S.D.N.Y., 132 F.Supp. 633, thus in effect confirming the title of the respondents for the condemnation proceedings. The trustee then asked for a reargument, asserting that not all creditors were paid; but the judge, conceding that thus an issue of fact was presented, held that this was immaterial, since the property had been effectually abandoned by the creditors. Hence he reaffirmed his previous decision. The trustee now appeals.
 
 
 3
 It is the trustee's position that, even though he was not appointed until 1955, the bankrupt's property vested in him upon the adjudication in 1936 and could not be abandoned by the creditors or by anything short of an affirmative act of a trustee, approved by the court. In this court the respondents accept the position taken by Judge Dimock and support his conclusion that the creditors by nonaction have effectually abandoned and nullified all claim of the estate to the asset in question.
 
 
 4
 It will be apparent at once that the situation presents various anomalies, and that the parties have faced certain tactical difficulties, which, as resolved, have led only to new difficulties. Presented with the problem of how to get the money out of the hands of the City, the bankrupt sought a reopening of the abortive bankruptcy proceeding of nineteen years earlier with the intent of showing that there was nothing further to be done except to respect the conveyance to its president's wife. It was thus seeking certain benefits from a proceeding which it had allowed to die. The newly appointed trustee, on the other hand, is trying to attack the conveyance as in fraud of creditors who may well have allowed their claims to be barred by limitations, laches, or otherwise. We have not the facts, but it is easy to conceive that creditors could be both unduly prejudiced and unduly aided by this breath of life in the ancient proceeding. For it may result in favor to claims which should be really considered dead or in prejudice to other claims then or later accruing on the basis that no bankruptcy had taken place. So far as the record discloses, the creditors did not know, nor had they any occasion to know, of the bankruptcy proceeding in 1936. The district judge attempted to cut the Gordian knot by acting on the theory of abandonment; but this has the difficulty as to how creditors may be prejudiced by a court action of which they had no knowledge or in any event in which they had no occasion to participate. Obviously the real source of trouble is in the sudden coming to life of a proceeding dead for nineteen years.
 
 
 5
 Prior to the Chandler Act amendments of the Bankruptcy Act in 1938 it had become fairly well settled that failure to provide the indemnity required under Bankruptcy General Order 10, 11 U.S.C.A. following section 53, would result in dismissal of the proceedings and that the admonition of 11 U.S.C. § 95(g) against dismissal of a bankruptcy petition until after notice to the creditors did not apply to a proceeding which had failed to get under way for lack of the deposit of the required indemnity. Zimmerman v. Eden, 60 App.D.C. 338, 54 F.2d 449; In re Crisp, D.C.Tenn., 239 F. 419; In re Schwartz, D.C.E.D.N.Y., 16 F.Supp. 993, affirmed 2 Cir., 89 F.2d 172. The 1938 amendments provided that courts of bankruptcy could thereafter close estates for the additional ground 'that the parties in interest will not furnish the indemnity necessary for the expenses of the proceeding or take the steps necessary for the administration of the estate'; it also provided that such courts might 'reopen estates for cause shown'-- 'for cause shown' being a modification of the former 'whenever it appears they were closed before being fully administered.' 11 U.S.C. § 11(a) (8). Thus in place of the former order of dismissal of the entire proceeding we now have the referee's order closing the estate as here and we have a general provision that the estate may be reopened for cause shown.
 
 
 6
 The problem as to how much of the former law definitely terminating the bankruptcy upon failure to file indemnity is still preserved has been before the courts at different times. The courts have shown a very definite tendency not to allow a reopening of an estate for the benefit of the bankrupt when his act is the cause of the termination of the proceeding. Thus in a case which seems authoritative for the present issue, In re Perlman, 2 Cir., 116 F.2d 49, an estate had been closed for lack of indemnity and a judgment creditor had then proceeded by way of supplementary proceedings in a state action to attempt to realize on his judgment. The bankrupt obtained a reopening of the bankruptcy and a stay order preventing the creditor from proceeding with his garnishment. On appeal, however, our court reversed and held that motions to vacate the stay must he granted, since the bankrupt's excuse for failure to deposit his indemnity, that he could not get away from his job during working hours to attend a bankruptcy hearing, was too flimsy to be recognized. The present writer dissented in that case; but the circumstances there emphasized, of the considered exercise of discretion by an experienced trial judge where the bankrupt acted promptly within five days of notice to proceed with his bankruptcy, highlight the extreme nature of this case involving nineteen years' delay. Later we held our ruling res judicata so as to prevent a discharge to the bankrupt sought in a subsequent proceeding. Perlman v. 322 West Seventy-Second Street Co., 2 Cir., 127 F.2d 716. This precedent has been followed in various other decisions where we have refused to act at the behest of the bankrupt in supporting a reopening of the bankruptcy. See, e.g., In re Lowerree, 2 Cir., 157 F.2d 831; Duggan v. Franklin Square Nat. Bank, 2 Cir., 170 F.2d 922, 924; also In re Butts, 2 Cir., 123 F.2d 250.
 
 
 7
 It is true that a rather usual ground for reopening a bankruptcy estate which has been closed is the discovery of unexpected assets, and perhaps that may have been a background thought for the reopening. But such was not the course taken. The bankrupt had the burden of making a real showing of good cause; but the action as taken was of a purely formal nature. The order signed by the judge shows that it was on an ex parte application without notice and hearing, based on the petition of John Viviani, the bankrupt, 'from which it appears that good cause has been shown for reopening the above-named estate and proceedings.' Actually the petition shows quite the contrary. It contains a rather full recital of the facts and includes statements from various former creditor showing that they have no further claim. It initially assigns, as a reason for the petition, the determination whether or not the bankrupt should be discharged or the petition of 1936 be dismissed. After reciting the events which had transpired, it adds significantly:
 
 
 8
 '13. Because the alleged bankrupt is now solvent and not insolvent, it would appear incongruous to discharge it in bankruptcy. It appears the only remedy is to dismiss or cancel the pending petition of record.'
 
 
 9
 Since an obvious purpose of the Chandler amendments to 11 U.S.C. § 11(a)(8) was to make unnecessary the barren formality of dismissal where the order of closing serves all purposes, it would seem that the petition conclusively showed the absence of good cause. As to the creditors, none have come forward to claim the benefit of the bankrupt's petition. Quite possibly a creditor could not thus properly step into the shoes of the bankrupt; but in any event, the court was in no position to know whether creditors, if existing contrary to the allegations of the petition, were to be helped unduly or prejudiced seriously by a grant of the petition.
 
 
 10
 Undoubtedly the Chandler Act presupposed a showing of persuasive reasons for the reopening of estates which had been closed; and obviously such showing should be the more pointed, the longer the time which had ensued. Where a business has been operating for nineteen years after bankruptcy proceedings have become abortive, it would seem at least difficult, and perhaps impossible, to attempt to restore things to their status at the time the original petition was filed with any assurance of fairness to all involved. At the very least there should be an exploration of these various considerations and a judgment based only on a record with adequate findings to show the statutory basis for the later proceeding. The need to satisfy the New York City authorities seems thus neither adequate nor efficacious for the purpose. Since there is thus no appropriate basis therefor, we consider that the present orders and the formal reopening of the estate upon which they stand are erroneous.
 
 
 11
 In view of this conclusion we do not need to consider the issue so much discussed below of abandonment. We think it proper, however, to point out in connection with petitioner's reliance upon In re Mirsky, 2 Cir., 124 F.2d 1017, certiorari denied Mirsky v. Conlew, Inc., 317 U.S. 638, 63 S.Ct. 29, 87 L.Ed. 514, suggesting the necessity of court approval of abandonment of assets by a bankruptcy trustee, that it is a far different case from the present one. There the bankruptcy proceeding did not prove abortive; even though no trustee was appointed because of lack of assets in the estate, it took its appointed course and served all purposes for which it could be made available under the circumstances.
 
 
 12
 The order appealed from is reversed and the proceeding is remanded to the district court with directions for dismissal of the motion for its reopening and all steps subsequent thereto.