The **DELAWARE AND HUDSON COMPANY, Petitioner-Appellant,**

v.

The **NEW YORK, NEW HAVEN AND HARTFORD RAILROAD COMPANY**

and

**Connecticut Railway and Lighting Company, Respondents-Appellees.**

No. 32, Docket 23551.

United States Court of Appeals Second Circuit.

Argued Oct. 6, 1955.

Decided Nov. 7, 1955.

**292**

Frederick H. Wiggin, New Haven, Conn. (Wiggin & Dana and John W. Barnett, New Haven, Conn., on the brief), for petitioner-appellant.

J. H. Gardner, Jr., New Haven, Conn., for respondent-appellee New York, N. H. & H. R. Co.

Edward K. Hanlon, New York City (Beekman & Bogue and A. T. Wenzell, New York City, on the brief), for respondent-appellee Connecticut Railway & Lighting Co.

Before CLARK, Chief Judge, and MEDINA and LUMBARD, Circuit Judges.

CLARK, Chief Judge.

The Delaware and Hudson Company appeals from an order in the reorganization proceedings of The New York, New Haven and Hartford Railroad Company which dismissed its petition for reopening of Order 763, entered on Claim 82 in the reorganization proceedings on August 4, 1944. Although the Consummation Order and Final Decree in the proceedings was entered on September 11, 1947, the present petition was not filed until May 11, 1953, or nearly six years later. The original Claim 82 was based upon the New Haven's guaranty of the par value and accrued dividends of the preferred stock of the Boston Railroad Holding Company. Now Delaware, as presently an owner of certain of these shares and relying on a variety of reasons for its delayed action, seeks a reopening of the proceedings to obtain a greater allowance for its benefit than has heretofore been accorded this interest. Although the complex facts and the several arguments deduced therefrom have been presented with skill and adroitness, we are constrained to conclude, as Judge Hincks convincingly demonstrates in his reasoned opinion, D.C. Conn., 128 F.Supp. 550, that Delaware's position is fundamentally untenable.

The Boston Railroad Holding Company was a corporation specially chartered in 1909 by the Commonwealth of Massachusetts to hold the securities of the Boston and Maine Railroad, and all its common stock has always been owned by the New Haven. In 1910 the charter of the Holding Company was amended, Acts and Resolves of Mass.1910, c. 639, to permit the issuance of preferred stock having a par value of $100 per share. In provisions set forth at 128 F.Supp. 552, 553, this amendatory Act prescribed a preference on liquidation for the preferred stock up to its par value, plus accrued dividends, and further prescribed payment of semi-

annual cumulative dividends, with the stock of its accrued dividends a charge and lien upon the Boston and Maine Railroad stock held by the Holding Company; it then provided means by which a majority of preferred stockholders could, in case of default in payment of dividends, apply to the Supreme Court of Massachusetts for an order of sale of the Boston and Maine stock to enforce the lien of the preferred stock thereon. Its § 5 also authorized a railroad corporation owning any of the common stock of the Holding Company to hold the preferred and to guarantee payment on the preferred of dividends and of par value on liquidation. Pursuant to this section the Holding Company issued 272,939 of its preferred shares to the New Haven; and in 1911, the New Haven sold 28,000 of these shares to the public. On all the stock certificates for this stock appears the New Haven's guaranty of cumulative dividends and the $100 par value upon which this claim is based.[1] When the New Haven went into reorganization in 1935, 24,150 of these shares were still in the hands of public owners. Of the remaining preferred shares, the New Haven held 247,759, and 1,030 were in the treasury of the Holding Company.

After the start of the reorganization proceedings in 1935, the New Haven trustees pursuant to court order made four regular guaranteed semiannual preferred stock dividend payments. They defaulted, however, on all preferred dividends which became due after July 10, 1937.

On March 30, 1936, the president of the Holding Company, acting on behalf of those holding its guaranteed preferred stock, filed an unsecured claim (Claim 82) for the dividend due on January 10, 1936, and for further dividends that would thereafter become due. The management of this claim was then assumed by a Protective Committee for the preferred stockholders which by sanction of the Interstate Commerce Commission given on August 13, 1936, became the representative of 19,577 shares of publicly held preferred stock. The Protective Committee on April 3, 1941, also filed its Petition for Order 570 seeking to compel action by the New Haven trustees to bring about a liquidation of the Holding Company, which was the contingency upon which the guaranty of par value depended. On April 10, 1941, the New Haven trustees duly answered this Petition and the original claim, asserting that all claims in behalf of the preferred stock were so uncertain and contingent as not to be allowable.

Meanwhile the Interstate Commerce Commission (by Division 4) had submitted its Report and Order of March 22, 1940, on the New Haven Plan, 239 I.C. C. 337, in which it concluded that the preferred stock guaranty should be disaffirmed. The Commission adhered to this conclusion through all Supplemental Reports and Orders, and the disaffirmance was part of the Plan as finally approved, confirmed, and consummated.

On March 6, 1944, the Plan of Reorganization was approved; and on that

---

[1]. "For value received, The New York, New Haven and Hartford Railroad Company, a corporation established and acting under the laws respectively of Connecticut, Massachusetts and Rhode Island, hereby guarantees the payment of cumulative dividends on the shares of stock represented by this certificate at the rate of four per centum (4%) per annum as stipulated in this certificate, and the payment of one hundred dollars ($100.) upon each share of said stock in case of liquidation or distribution of Boston Railroad Holding Company, and of any deficiency resulting from a sale under the provisions of Section 4 of Chapter 639 of the Acts of Massachusetts of the year 1910."

The certificates also contain the following legend as required by the antitrust decree cited:

"The shares represented by the within certificate are entitled to preference in liquidation according to the terms of the decree entered by the District Court of the United States for the Southern District of New York on October 17th, 1914, as modified by the decree of said Court entered on the 4th day of June, 1923, in the case of the *United States of America v. The New York, New Haven and Hartford Railroad Company and others.*"

same date the reorganization court denied the Petition for Order 570 (seeking a liquidation of the Holding Company) on the ground that such liquidation was not to the advantage of the New Haven estate (the holder of the majority of the preferred).

On July 28, 1944, the reorganization court decided Claim 82, which was treated as one for an allowance (1) on account of a breach of the guaranty of $100 (par value) on the preferred stock by reason of the disaffirmance of the guaranty under the Plan, and (2) on account of a breach of the guaranty of the stipulated dividends on the preferred stock. While allowing a payment of $32 per share (payable in common stock of the reorganized New Haven) for breach of the dividend payment guaranty (an allowance not disputed here), the court disallowed in full the claim based on disaffirmance of the guaranty of par value on liquidation. Order 763 entered on August 4, 1944, described this latter branch of the claim as "wholly disallowed, denied and dismissed." The reason given by the court for this denial was that, under the Massachusetts Acts incorporating the Holding Company, only the New Haven trustees, as owners of the majority of the preferred stock, had power to institute liquidation proceedings. See Hurley v. Boston R. Holding Co., 315 Mass. 591, 54 N.E.2d 183. Since the contingency of the trustees' so acting might not, and probably would not, come to pass, the court held that no loss had been proved on account of the breach of the par value guaranty. No appeal was ever taken from either Order 570 or Order 763.

Meanwhile, between January 27 and March 8, 1944, Delaware purchased 10,000 shares of the publicly held preferred stock of the Holding Company, most of which had been previously represented by the Protective Committee of the preferred stockholders. The last of Delaware's purchases was made only two days after entry of the Memorandum of Decision directing denial of Petition for Order 570 and almost five months before entry of Order 763, which adjudicated Claim 82. The stock purchased by Delaware never was transferred on the Holding Company's transfer books, but remained in the name of Delaware's brokers. Delaware never filed an appearance or participated in its own right and name in the reorganization proceedings until the filing of the present petition; nor, so far as appears, did it ever indicate that it disassociated itself from the prosecution of Claim 82 or the management of Petition for Order 570 by the Protective Committee for the publicly held preferred stock. When Delaware purchased the preferred shares it knew the New Haven was "in bankruptcy" and its attorneys carefully investigated the status of the Holding Company stock.

In 1945, Delaware supported legislation in the Massachusetts General Court to obtain dissolution of the Holding Company by legislative fiat; but that year the attempt failed. In 1946, however, the Massachusetts Legislature by its Chapter 518 of Acts of 1946 annulled the corporate existence of the Holding Company and provided for its receivership and liquidation. On July 3, 1947, at the earliest permissible date, Delaware joined with other preferred shareholders in a petition to a Massachusetts court for the receivership and liquidation of the Holding Company. So when the Final Decree and Order of Consummation in the New Haven reorganization proceedings was entered two months thereafter, Delaware, despite energetic activities on other fronts, had taken no part whatsoever in those proceedings.

In 1949, after the constitutionality of the Massachusetts Dissolution Act was upheld, Delaware & Hudson Co. v. Boston R. Holding Co., 323 Mass. 282, 81 N.E.2d 553, appeal dismissed 336 U.S. 932, 69 S.Ct. 746, 93 L.Ed. 1092, the liquidation of the Holding Company proceeded. Upon liquidation Delaware's contention that the lien of the publicly held preferred stock upon the Holding Company assets was prior to that of the preferred stock held by the New Haven estate was overruled, and the Massa

chusetts liquidation court allowed only $11.32 per share on this stock. See Delaware & Hudson Co. v. Boston R. Holding Co., 328 Mass. 63, 102 N.E.2d 67, certiorari denied 343 U.S. 920, 72 S.Ct. 676, 96 L.Ed. 1333. Notice of this allowance was sent to preferred stockholders on March 6, 1953. The present petition then followed. It sought for Delaware the difference between the $100 par value of the preferred stock and the $11.-32 recovered in the Massachusetts liquidation proceedings—notwithstanding the Final Decree in the reorganization and its long delay both from that and from the earlier disallowance of the claim by the reorganization court.

The demand of Delaware for a reopening is based upon the arguments that (1) Judge Hincks disallowed the claim based on par value at liquidation because he failed to consider the then apparently remote possibility of liquidation of the Holding Company by legislation, and (2) Delaware, now having secured such liquidation and the value of its claim now being capable of exact determination, should have its day in court. But these arguments do not square with what happened or indeed its own behavior throughout.

█ Delaware contends initially that jurisdiction over the claim of the public holders of preferred stock was expressly reserved to the reorganization court. It also asserts that the branch of Claim 82 relating to guaranty or par value was disallowed in full by the district court for the reason that the claim was not capable of liquidation; therefore this branch of Claim 82 continued to survive as an unliquidated claim. This contention rests upon §§ J(17) and K of the final New Haven Plan, quoted at 128 F. Supp. 556, which provided first for payment in new common stock of the New Haven of any claims allowed for breach of the contract of guaranty of Holding Company preferred stock " 'to the extent finally allowed by the court,' " and second for no other payment or assumption of the guaranty by the reorganized company. And there was a further provision requiring the court at the time of consummation of the Plan to determine the amount of common stock necessary to be reserved "for the satisfaction of claims not then liquidated" and to reserve the amount so determined for that purpose.

Hence it is argued that jurisdiction over the "unliquidated" branch of Claim 82 survived the consummation of the Plan and must now be satisfied from the common stock thus reserved for the purpose. This theory, however, runs afoul of the clear language of both the Plan and the Orders and Opinions of the district court. The "Plan" was approved by the reorganization court on March 6, 1944, and the provision of § J(17) as of that date looks to a future determination of the amount of the guaranty claim by the court. Such a determination took place on August 4, 1944, when the claim was allowed in the amount of $32 for defaulted dividends, and was " 'wholly disallowed, denied and dismissed' " as to any further amount. It is difficult to imagine any allowance more "final" than this or any "liquidation" more explicit. Order 763 by the very force of its language clearly took Claim 82 out of the category of unliquidated claims contemplated by the provision as to them. Moreover, there is evidence that this provision was added in the Fifth Supplemental Report to provide for three categories of claimants: (1) the "Secured Sixes," (2) the Boston Terminal Company trustee, and (3) the Boston and Providence Railroad Company. There is nothing to suggest that this paragraph was intended to cover claims upon Holding Company preferred stock.

██ Delaware also attempts to rest jurisdiction upon two provisions of the Final Decree, quoted at 128 F.Supp. 556, 557, from Section XI, 2, giving the court authority to act (f) on any claim filed or provided for in the Plan, but unfixed as to amount, and (g) as to the reserved shares of " 'Common Stock of the Reorganized Company in so far as necessary to provide for any claim, including the claim of the Secured Sixes' " likewise remaining unfixed as to amount. These

sections, as it appears from the record, were included in the Decree to accommodate the claims of the "Secured Sixes," the Boston Terminal Company trustee, and the Boston and Providence Railroad Company—all of which were not expected to be "fixed" or "liquidated" until after consummation. Though Delaware vigorously argues that these reservations of jurisdiction may also be used to cover Claim 82, its contention is of course rooted in its basic premise that the Claim was never "fixed" or "liquidated" before consummation. · Since we have found this premise wholly erroneous, Delaware's present argument must fail. Only by a tortured construction of otherwise ·plain language could we conclude that Delaware's claim is within the court's express reservation of jurisdiction. Such a reservation should not be construed overbroadly. Towers Hotel Corp. v. Lafayette Nat. Bank of Brooklyn in N. Y., 2 Cir., 148 F.2d 145; North American Car Corp. v. Peerless Weighing & Vending Machine Corp., 2 Cir., 143 F.2d 938. Thus we are quite convinced that there was no reservation of jurisdiction over Delaware's claim. Had we been more doubtful, we should still have given weight to the persuasive opinion of Judge Hincks, who was thoroughly familiar with the Plan of Reorganization. Commission of Dept. of Public Utilities of Com. of Mass. v. New York, N. H. & H. R. Co., 2 Cir., 178 F.2d 559, 563, 564, certiorari denied 339 U.S. 943, 70 S.Ct. 796, 94 L.Ed. 1359.

Delaware also asserts that the district court had power to reopen its Final Decree under §§ 2, sub. a(8) or 2, sub. a(2) of the Bankruptcy Act, 11 U.S.C. §§ 11, sub. a(8) or 11, sub. a(2), or under Fed.Rules Civ.Proc., rule 60(b). Judge Hincks in dealing with this question has concluded that, whether or not these provisions apply to railroad reorganization proceedings, they add nothing to the power of the ·Court of Bankruptcy in exercising the powers of a court of equity to reopen and revise its own decrees. He found that these equity powers extended to § 77 proceedings by

virtue of § 77, sub. a, 11 U.S.C. § 205, which provides that the reorganization court "may exercise in addition to the powers conferred by this section all the powers, not inconsistent with this section, which a Federal court would have had if it had appointed a receiver in equity of the property of the debtor for any purpose." He reached this conclusion despite the tenor of finality in § 77, sub. f, and·the wording of § XI, 3, of the Final Decree, which, except for the express reservations of jurisdiction stated in the Decree, "wholly terminated" and "closed" the proceedings.

■■ We do not here decide whether the power to reopen a final decree in railroad reorganization proceedings, if existing, is to be derived from the inherent equity powers of the reorganization court or from § 2, sub. a(8), of the Bankruptcy Act or from F.R. 60(b). See Wayne United Gas Co. v. Owens-Illinois Glass Co., 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557; Pfister v. Northern Illinois Finance Corp., 317 U.S. 144, 63 S.Ct. 133, 87 L.Ed. 146; In re Lowerree, 2 Cir., 157 F.2d 831; Grand Union Equipment Co. v. Lippner, 2 Cir., 167 F.2d 958, 961; New York, N. H. & H. R. Co. v. R. F. C., 2 Cir., 180 F.2d 241. But from whatever source derived; it may be exercised only if the equitable standing of the applicant for such relief justifies a reopening. See Grand Union Equipment Co. v. Lippner, supra, 2 Cir., 167 F.2d 958, 961. In this case the equities are so strongly adverse to Delaware that the district judge clearly abused ·no discretion vested in him when he refused to act.

■ The district court found that Delaware at least as early as January, 1945, was considering the possibility of seeking liquidation of the Holding Company by legislation; and this may have been Delaware's goal as early as May, 1944, when (as it reported in its 1944 Annual Report) it publicly promised to "take steps to secure the distribution of Boston and Maine stock held by the Holding Company." The Dissolution Act was passed with Delaware's active support in

1946; and on July 3, 1947, a petition was filed in a Massachusetts court seeking liquidation of the Holding Company. All these events transpired before the Final Decree of September 11, 1947. Delaware has offered no satisfactory explanation why it deliberately ignored the reorganization proceedings while it sought dissolution in Massachusetts. Judge Hincks adjudicated Claim 82 without considering the possibility of a legislative dissolution of the Holding Company—an entirely reasonable course of action under the facts available to him. Had Delaware taken the obvious step of bringing to the attention of the court its maneuvers in Massachusetts, the court might have valued the contingency differently or might have postponed adjudication of the par value claim and reserved jurisdiction to determine it after the Final Decree. The policy of finality in reorganization decrees may not be ignored in order to reward such unjustifiable tardiness. See Towers Hotel Corp. v. Lafayette Nat. Bank of Brooklyn in N. Y., supra, 2 Cir., 148 F.2d 145, 148.

Delaware asserts that its delay here was justified because the Claim for par value, being unliquidated, was preserved by § J(17) of the Plan, and that no effective action in the reorganization court could be taken until the Claim was finally liquidated by action in Massachusetts. Since, as we have shown, Claim 82 was not unliquidated, the argument fails. We find it difficult to conceive of reasonable reliance on the preservation of a claim as "unliquidated" when that claim has been "wholly * * * denied and dismissed."

■ Although in general a plan may not destroy a contingent claim without providing for it in some manner—see Old Colony Bondholders v. New York, N. H. & H. R. Co., 2 Cir., 161 F.2d 413, 428, certiorari denied Institutional Group for Boston Terminal Bonds v. New York, N. H. & H. R. Co., 331 U.S. 859, 67 S.Ct. 1755, 91 L.Ed. 1866—we conclude that here, where a claimant has deliberately refrained from disclosing to the court before consummation the possibility of liquidation by legislation, it cannot now be heard to assert that the Plan must be interpreted to provide for its "unliquidated" claim.

■ Though Judge Hincks found Delaware's unexcused delay sufficient in itself to justify dismissal of the petition, he went on to hold the petition barred because of the intervening rights of holders of "Certificates of Interest," which vested on the basis of the Final Decree. These certificates entitled unsecured creditors to share pro rata in the common stock of the reorganized New Haven which remained after satisfaction of the claims unliquidated at consummation of the Plan. To allow Delaware any satisfaction of its claim would impair the rights of Certificate Holders by a like amount. There have been active dealings in the Certificates since their issuance. We agree with Judge Hincks that the intervention of vested rights furnishes an additional reason for refusing to reopen the proceedings. See In re Peyton Realty Co., 3 Cir., 148 F.2d 771.

Affirmed.