309 F.2d 3
 Lola Ree HULL, Herbert J. Vatcher, Lillian Vatcher and Bruce Fenton, Appellants,
v.
Robert B. POWELL, Referee in Bankruptcy, John P. Stodd, Trustee in Bankruptcy, Maria Benson, Administratrix of the Estate of John W. Benson, deceased, and William M. Noe, Appellees.
 No. 17177.
 United States Court of Appeals Ninth Circuit.
 September 13, 1962.
 Rehearing Denied November 16, 1962.
 
 William H. Brawner, Los Angeles, Cal., Paul M. Weil, Whittier Cal., for appellant.
 Fred H. Almy and Robert M. Castle, San Bernardino, Cal., for appellee.
 Before BARNES, MERRILL and BROWNING, Circuit Judges.
 BROWNING, Circuit Judge.
 
 
 1
 A bankruptcy estate was closed without administration in 1935. It was reopened in 1958. After reopening, the bankruptcy court disallowed claims of all creditors on various grounds. They appealed. We do not reach the question of the allowability of the claims. We hold that in the circumstances of this case the motion to reopen should have been denied.
 
 
 2
 1. John W. Benson was adjudged a bankrupt. A trustee was appointed, made a return of "no assets," and was discharged. The estate was closed. All of these events occurred in 1935. In 1958 a petition to reopen was filed. It alleged that certain real property standing in the name of the bankrupt at the time of his adjudication had been sold prior to his adjudication to the State of California for nonpayment of taxes; that the petitioner owned some of this property sold by the State in 1956 for nonpayment of taxes; and that the adjudication of the bankrupt and the closing of the estate without administration left a cloud upon petitioner's title. Petitioner prayed that the estate be reopened "for the purpose of clearing the title" and offered to pay the estate for a release of the bankrupt's interest.
 
 
 3
 A court of bankruptcy is authorized to reopen an estate "for cause shown."[1] The power thus conferred is broad, but not unlimited. Its exercise is conditioned upon a showing that the public interest and the purposes of the Bankruptcy Act will be served by further administration of the estate.[2]
 
 
 4
 We are aware of no other case in which an estate has been reopened on the petition of one who asserted no more than that an unresolved potential claim of the estate constituted a cloud upon his title. It has been held improper to reopen an estate for the purpose of clarifying the title of the bankrupt or his vendee,[3] or even the title of a vendee of the trustee.[4] The present petitioner's interest is more remote.[5] We need not hold that an estate could never be reopened upon such a petition.[6] In this case, however, the doubt as to the advisability of reopening arising from the status of petitioner and the nature of his allegation was confirmed by all other relevant circumstances.
 
 
 5
 Weakness of the claim of the estate to contested assets and the necessity of establishing that claim by proceedings held long after the event casts doubt upon the propriety of reopening.[7] This was not a case in which the petition to reopen disclosed unadministered assets clearly belonging to the estate. At most it suggested the existence of a possible cause of action upon which the estate might or might not ultimately prevail.
 
 
 6
 The real property referred to by petitioner had been listed by the bankrupt in his schedule of assets filed in 1935. The petition alleged that the property had "little or no value," and indeed that it had already been sold to the State for taxes. It is not suggested that the trustee acted improvidently in making a return of "no assets," or that the estate was improperly closed in the light of circumstances then existing. Although the bankrupt failed to secure a formal order authorizing abandonment, it seems evident that the trustee prudently concluded that the value of the property was less than taxes due and the expense and trouble of sale. We do not decide that it would necessarily be held that the original trustee had abandoned the property, but we do suggest that such a result was not improbable.[8]
 
 
 7
 2. It appears from what has been said that it was at least doubtful whether the petition in the present case would have stated good cause for a reopening of the estate if such equitable relief had been expeditiously sought; it did not state sufficient cause to move a court of equity to reopen an estate closed for almost a quarter of a century
 
 
 8
 The bankruptcy court is a court of equity and must be guided by equitable principles in the exercise of its jurisdiction. As a court of equity it may, and should, condition relief or deny it altogether when appropriate to safeguard public and private interests and protect the court's jurisdiction from misuse.[9] It is a familiar principle that "courts of equity often act upon their own inherent doctrine of discouraging, for the peace of society, antiquated demands, by refusing to interfere where there has been gross laches in prosecuting rights * * *."[10]
 
 
 9
 A concern for promptness and finality is reflected in the provisions of the Bankruptcy Act.[11] "Undoubtedly the Chandler Act presupposed a showing of persuasive reasons for the reopening of estates which had been closed; and obviously such showing should be the more pointed, the longer the time which had ensued."[12] Although the Bankruptcy Act provides no time limit for an application to reopen an estate, the bankruptcy court may, and should, reject an application which, in all the circumstances, is unduly delayed.[13]
 
 
 10
 The petitioner's delay in seeking relief was inordinate. The petition, filed in 1958, recites that the properties involved stood "in the name of the Bankrupt at the time of his adjudication." The adjudication itself was duly recorded on February 13, 1935. No order of abandonment or other formal disposition of the property in the estate appeared of record. The petition to reopen was premised upon the fact that the state of the record was such as to create a cloud upon the title to that property. Thus for twenty-three years the petitioner and his predecessors in title had record notice of the existence of the problem which is now advanced as cause for reopening, but took no action. Moreover, it appears that petitioner and his predecessors in title may have had an alternative remedy in the courts of the State which they made no effort to pursue.[14] No justification is suggested for the delay.[15] The time elapsed was long in terms of the strength of human memory and the length of human life; indeed, the bankrupt died shortly after the estate was reopened.
 
 
 11
 It has been said that the "touchstone" in determining the propriety of reopening a long dormant estate is whether conflicting rights have since arisen.[16] Stale disputed claims should be left in repose not only because the estate might fail and thus have no assets to administer but also because of the risk that the estate might succeed at the price of injustice to adverse parties. The petitioner himself is an intervening claimant, and, although he may have thought the reopening worth the risks involved, the record demonstrates that others who had acquired property once owned by the bankrupt considered their interests prejudiced. The active opposition to further administration, in this Court and in the Court below, came from a person who claimed intervening rights in property which once belonged to the bankrupt.
 
 
 12
 Other courts have held reopening barred by laches in circumstances less clear than those presented here.[17] We are aware of no comparable case in which reopening has been permitted.
 
 
 13
 We have given careful attention to the line of cases adopting the most liberal attitude toward reopening.[18] None of these cases, as it seems to us, is inconsistent in letter or spirit with our decision here. Few involved a delay at all comparable to that in the present case. In none had third-party interests intervened. Each involved either an asset clearly belonging to the estate, concealment of the relevant facts until shortly before the motion to reopen, the absence of an alternative remedy, or a combination of two or more of these factors — none of which was present here.
 
 
 14
 3. The creditors of the estate did not join in the petition to reopen, but we have also examined the equities as to them. We find them no stronger than those in favor of the petitioner — indeed, most of what we have said applies equally to the creditors. The debts of these creditors had been scheduled by the bankrupt. The creditors were aware of the substantial amount of real property listed by the bankrupt in his schedule of assets and left unadministered when the estate was closed. There is some suggestion that the bankrupt may have concealed other property, but the creditors cannot claim lack of notice of this possible additional source of recovery since allegations to the same effect are found in the original petition in bankruptcy which two of them filed in 1933. The claims of the two principal creditors were based upon "willful and malicious injuries to the person or property of another" and hence were not dischargeable,[19] and in any event the bankrupt was never discharged but was alive and amenable to suit for over twenty years. Yet the creditors made no effort either to pursue the remedy available to them at law or to move, long ago, for the reopening of the estate.
 
 
 15
 4. Appellants moved to strike from the title of the action the names of all appellees except the trustee. Only one appellee, a claimant of real property adverse to the trustee, appeared in this Court. The record on appeal was augmented on the motion of this appellee in the District Court, but only in respects in which we would have supplemented the record on our own motion.[20] Thus appellants are in no event prejudiced, and in view of the disposition which we reach on the merits we think it proper to leave the motion undecided.
 
 
 16
 The case is remanded with instructions to vacate the order granting the petition to reopen.
 
 
 
 Notes:
 
 
 [1]
 Bankruptcy Act, § 2 sub. a(8), as amended, 11 U.S.C.A. § 11 sub. a(8)
 
 
 [2]
 See 1 Collier, Bankruptcy 265-78 (14th ed.); 6 Remington, Bankruptcy §§ 2972-88 (5th ed. 1952)
 
 
 [3]
 Saper v. Viviani, 226 F.2d 608 (2d Cir. 1955)
 
 
 [4]
 In re Ostermayer, 74 F.Supp. 803 (D.N. J.1947)
 
 
 [5]
 The Court of Appeals for the Eighth Circuit has said: "The question as to whether the estate shall be reopened concerns merely the bankrupt and his creditors. Adverse claimants to the bankrupt's property have no direct interest in that question." Hunter v. Commerce Trust Co., 55 F.2d 1, 3 (8th Cir. 1932). See also Rogers v. Bank of America Nat. Trust & Savings Ass'n, 142 F.2d 128 (9th Cir. 1944). This Court has held that an adverse claimant to the bankrupt's property has no interest such as to permit him to appeal from an order reopening the estate. In re Snyder, 4 F.2d 627, 628 (9th Cir. 1925)
 
 
 [6]
 We have suggested that if satisfied of the existence of unadministered assets the bankruptcy court might reopen an estate sua sponte, whatever the source of the information. Schofield v. Moriyama, 24 F. 2d 473 (9th Cir. 1928)
 
 
 [7]
 Compare In re Kweit, 43 F.Supp. 585 (E.D.N.Y.1942), and In re Forman, 45 F.Supp. 295, 297 (E.D.N.Y.1942), with Corn Exchange Bank Trust Co. v. Empire Trust Co., 206 F.2d 30 (2d Cir. 1953)
 
 
 [8]
 Sessions v. Romadka, 145 U.S. 29, 12 S. Ct. 799, 36 L.Ed. 609 (1892). See generally 4 Collier, Bankruptcy 1329-43 (14th ed.); 2 Remington, Bankruptcy §§ 1142-48 (1956)
 
 
 [9]
 S. E. C. v. United States Realty Co., 310 U.S. 434, 455-456, 60 S.Ct. 1044, 84 L. Ed. 1293 (1940)
 
 
 [10]
 Wagner v. Baird, 48 U.S. (7 How.) 234, 258, 12 L.Ed. 681 (1849). See Abraham v. Ordway, 158 U.S. 416, 15 S.Ct. 894, 39 L.Ed. 1036 (1895); Hanner v. Moulton, 138 U.S. 486, 11 S.Ct. 408, 34 L.Ed. 1032 (1891)
 
 
 [11]
 "Promptness is an essential feature of any efficient system of bankruptcy." 3 Collier, Bankruptcy 373 (14th ed.)
 
 
 [12]
 Saper v. Viviani, 226 F.2d 608, 611 (2d Cir. 1955). See also 6 Remington, Bankruptcy 608 (5th ed. 1952)
 
 
 [13]
 1 Collier, Bankruptcy 267 (14th ed.); 6 Remington, Bankruptcy § 2976 (5th ed. 1952)
 
 
 [14]
 See Beck v. Unruh, 37 Cal.2d 148, 231 P.2d 13 (1951). See also In re Ostermayer, 74 F.Supp. 803 (D.N.J.1947)
 
 
 [15]
 Compare In re Fair Creamery Co., 193 F.2d 5 (6th Cir. 1951), and In re Reese, 115 F. 993 (N.D.Ala.1902), with In re Thomas, 204 F.2d 788 (7th Cir. 1953), and Slocum v. Edwards, 168 F.2d 627 (2d Cir. 1948)
 
 
 [16]
 Harris v. Warshawsky, 184 F.2d 660, 663 (2d Cir. 1950). Cf. Delaware & Hudson Co. v. New York, N. H. & H. R. R., 227 F.2d 291, 297 (2d Cir. 1955); Standard Steel Works v. American Pipe & Steel Corp., 111 F.2d 1000 (9th Cir. 1940)
 
 
 [17]
 In re Fair Creamery Co., 193 F.2d 5 (6th Cir. 1951); Saper v. Viviani, 226 F.2d 608 (2d Cir. 1955); In re Zimmer, 63 F.Supp. 488 (S.D.Cal.1945); In re Hochman, 57 F.Supp. 312 (E.D.N.Y. 1944) (dictum); In re Forman, 45 F. Supp. 295 (E.D.N.Y.1942); In re Kweit, 43 F.Supp. 585 (E.D.N.Y.1942). See also Delaware & Hudson Co. v. New York, N. H. & H. R. R., 227 F.2d 291 (2d Cir. 1955); McColgan v. Maier Brewing Co., 134 F.2d 385 (9th Cir. 1943); Standard Steel Works v. American Pipe & Steel Corp., 111 F.2d 1000 (9th Cir. 1940)
 
 
 [18]
 Corn Exchange Bank Trust Co. v. Empire Trust Co., 206 F.2d 30 (2d Cir. 1953); In re Thomas, 204 F.2d 788 (7th Cir. 1953); Harris v. Warshawsky, 184 F.2d 660 (2d Cir. 1950); Slocum v. Edwards, 168 F.2d 627 (2d Cir. 1948); In re Mirsky, 124 F.2d 1017 (2d Cir. 1942); Tuffy v. Nichols, 120 F.2d 906 (2d Cir. 1941); In re Schreiber, 23 F.2d 428 (2d Cir. 1928); In re Stein, 111 F.Supp. 327 (S.D.N.Y.1953); In re Nichols, 53 F. Supp. 609 (S.D.N.Y.1943); In re Reese, 115 F. 993 (N.D.Ala.1902). See also Grand Union Equipment Co. v. Lippner, 167 F.2d 958 (2d Cir. 1948)
 
 
 [19]
 Bankruptcy Act, § 17, sub. a(2), 11 U.S.C.A. § 35, sub. a(2)
 
 
 [20]
 Fed.R.Civ.P. 75(h), 28 U.S.C.A