**In re NORTH DUKE LIMITED PARTNERSHIP, Debtor.**

**Bankruptcy No. 79–00001.**

United States Bankruptcy Court, District of Columbia.

Nov. 20, 1984.

Stephen Daniel Keefe, Keefe and Hart, Washington, D.C., for debtor.

## ORDER

GEORGE FRANCIS BASON, Jr., Bankruptcy Judge.

This matter is before the Court upon the motion of North Duke Mall Limited Partnership ("North Duke"), Debtor, to reopen bankruptcy proceedings which had been closed by order of this Court dated September 21, 1981. North Duke had filed a petition seeking relief under Chapter XII of the Bankruptcy Act on January 3, 1979. At the time of its filing, the partnership was comprised of one general partner, Eugene Hooper, and two limited partners, Anthony Musolino and John F. Warner. The sole asset of the partnership was a shopping center located in Durham, North Carolina.

Foreclosure proceedings begun by the major creditor of North Duke, Mortgage Investors of Washington ("MIW"), precipitated the bankruptcy petition. During the course of the bankruptcy proceeding North Duke operated as debtor-in-possession with general partner Hooper conducting its affairs. According to an affidavit of Hooper, "it became necessary to settle affairs of the Limited Partnership and a settlement agreement was reached with MIW." [1] On October 23, 1979, an order approving and implementing certain provisions of the settlement agreement was signed by this Court. This order left MIW free to commence or recommence foreclosure proceedings under its deed of trust.

In 1977, prior to the filing of this bankruptcy case, Musolino commenced an action for an accounting against North Duke and partners Hooper and Warner in the Circuit Court of Fairfax County, Virginia. [2] Musolino's action was prosecuted prior to, during, and after the North Duke bankruptcy proceeding. On July 26, 1984, the Circuit Court issued a final decree and judgment awarding to North Duke a judgment of $8,430,000.00 plus interest against Hooper, and ordering Musolino and Warner to dissolve the partnership. Liability was based upon the court's determination that Hooper had caused the loss of partnership property and had also breached his construction contract with the partnership.

In light of efforts to enforce the Virginia Court's judgment Hooper now seeks, through the entity of North Duke, to reopen the original bankruptcy case which has been closed since 1981. His request is premised upon two principal points. First, he claims that he was, until recently, unaware that the North Duke estate had been closed without a disposition of all matters regarding the partnership. Hooper attributes some of his misunderstanding about the bankruptcy to the death of one of North Duke's principal attorneys. Second, Hooper contends that had he known that the settlement agreement and this court's order, which allowed MIW to foreclose against North Duke, would be used against him in any court proceeding, he would not have settled with MIW on behalf of North Duke. He now requests that the bankruptcy proceeding be reopened in order to settle the affairs of North Duke.

As a threshold matter, this Court notes that the law applicable in this case is the Bankruptcy Act of 1898. [3] A case commenced under the Bankruptcy Act and all related matters are conducted and determined under the Bankruptcy Act, rather than under the Bankruptcy Reform Act of 1978. Pub.L. No. 95–598, § 403, 92 Stat. 2683. The North Duke bankruptcy petition was filed on January 3, 1979, well before October 1, 1979, when the 1978 Act became effective. *See In re Becker's Motor Transportation, Inc.*, 632 F.2d 242 (3d Cir. 1980).

The provisions which govern this motion to reopen the North Duke bankrupt-

---

**1.** Affidavit in Support of Motion to Reopen Proceedings and Relief from Ancillary Proceedings.

**2.** *Musolino v. North Duke Limited Partnership,* Chancery No. 54683 (Cir.Ct. Fairfax County, July 26, 1984).

**3.** As amended by the Chandler Act in 1938.

cy case are section 2(a)(8) of the Bankruptcy Act and former Bankruptcy Rule 515. Under these provisions the court may reopen a case where the movant has shown "good cause" as determined by the court. *Hull v. Powell,* 309 F.2d 3, 4 (9th Cir.1962). The decision whether a bankruptcy estate should in fact be reopened is within the sound discretion of the court. *In re Haker,* 411 F.2d 568, 569 (5th Cir.1969); *Reid v. Richardson,* 304 F.2d 351, 355 (4th Cir. 1962); *In re Holloway,* 10 B.R. 744, 745 (Bankr.D.R.I.1981).

This requirement is meant to promote the efficient and effective settlement of bankruptcy estates. More specifically, it has been noted that "[t]he right to reopen and reinstate a bankruptcy case exists where there is a seasonable and diligent application, good cause, and the absence of intervening rights which would make it inequitable and unjust to disturb the case." *In re Baker,* 299 F.Supp. 404, 407 (W.D. Mo.1969). Upon review of the papers accompanying North Duke's motion, it does not appear that those criteria have been met.

■ This case was closed by order of this Court on September 21, 1981. Now, over three years later, Movant seeks to reopen the estate because Hooper claims he was not aware that the disposition of all of North Duke's affairs had not been completed. North Duke has not set forth a satisfactory excuse for its delay in asserting its rights. Hooper's asserted personal ignorance of the ramifications of actions he took on behalf of North Duke is irrelevant. There has been no allegation that the debtor North Duke itself, through its counsel, was unaware of North Duke's rights and liabilities. Indeed, the clear implication of Hooper's present allegation of his own personal ignorance is that the now-deceased counsel was fully informed and aware. Moreover, both Hooper and North Duke's counsel were aware of the suit brought by Musolino in the Virginia Court; both also participated in formulating the MIW settlement agreement.

Permitting North Duke to reopen the estate would work an injustice to the rights of dissolving partners Musolini and Warner. Moreover, to reopen the estate would result in no apparent benefit to North Duke, because there is no evidence that further administration would lead to recovery of additional assets. Quite the contrary. The Virginia court's decree gave the North Duke Limited Partnership a judgment against Hooper. Reopening the bankruptcy estate would serve to jeopardize enforcement of this judgment.

Movant has not acted diligently in seeking relief from this Court, has shown no satisfactory reason for its delay, and by its delay has caused prejudice to the parties that prevailed in the Virginia proceeding. For these reasons this Court, *sua sponte,* finds that the equitable doctrine of laches, the absence of good cause, and the intervening rights of third parties all bar North Duke's request from being granted.[4]

The motion is therefore DENIED.

---

4. This Court is ever mindful that, as a court of equity, it is guided by equitable principles in the exercise of its powers. *Hull v. Powell,* 309 F.2d at 5. Although Bankruptcy Rule 924 specifies that a motion to reopen a case is not subject to the one year limitation on actions of Federal Rule of Civil Procedure 60(b), courts invariably require that a motion to reopen a case be brought without unconscionable delay. *In re Fair Creamery Co.,* 193 F.2d 5 (6th Cir.1951); *In re Tyler,* 27 B.R. 289 (Bankr.E.D.Va.1983); *see also* H.R.Rep. No. 595, 95th Cong., 1st Sess. 338 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 49 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.